## THE STATE v. JOHN L. DOOMS, Appellant.

Division Two, December 4, 1919.

1. **PRELIMINARY HEARING**: Waiver. Failure to accord to defendant a preliminary hearing before he is placed on his trial for murder is an irregularity, which may be waived; and if he does not raise the point at the time he is arraigned and pleads not guilty, or at any time until he files his motions for a new trial and in arrest, he waives the right.

2. **MURDER**: Information in First Degree: Election to Prosecute for Second Degree. Although the information charges defendant with murder in the first degree, the prosecuting attorney may elect to prosecute for murder in the second degree; and although the evidence unquestionably establishes murder in the first degree, defendant cannot on that account complain of a conviction of murder in the second degree and a verdict of twelve years' imprisonment.

3. **EVIDENCE**: Bloodhound: No Objection: Instruction. Deceased was shot a little after dark through a window while sitting in a room with his family. About two o'clock in the afternoon of the following day a bloodhound trailed the tracks of a man from the side of the house to defendant's abode in the neighborhood. No objection was made to the evidence when offered. The court instructed that "the jury are the sole judges of the weight of the evidence and the credibility of the witnesses," but gave no specific instruction as to the weight to be given to the testimony concerning the dog's actions. *Held*, first, that failure to object to the admission of the testimony at the time it was offered was a waiver of any objection thereto; and, *second*, the assignment in the motion for new trial that the "court failed to instruct the jury as to the weight of the testimony given against defendant by the bloodhound" does not amount to an assignment that the court failed to give a cautionary instruction on the point, but relates to the weight of the testimony, and the instruction given fairly and fully covered that assignment.

4. **INSTRUCTION**: Reasonable Doubt: Refusal of Defendant's. Where the court has given a correct instruction on the presumption of innocence and reasonable doubt in a murder trial, it is not error to refuse one on the same subject asked by defendant. Besides, the instruction requested by defendant in this case was argumentative and partisan, and should have been refused for that reason.

State v. Dooms.

5. **MOTIVE: Sufficient Evidence.** Testimony that because of some disagreement defendant and his wife had separated; that thereafter bitter feeling existed between him and the members of his family, especially towards her; that he left the community, and in a short time returned, stating that he had come back for a general settling up; that he told witnesses in the neighborhood that he would take his youngest son away with him, dead or alive; that the boys would not let him do it, but that he would get as many of them as they would get of him; that two or three weeks before the homicide he bought a rifle, and was frequently seen thereafter watching his wife's home while armed with the gun; and that at the time a gun was fired through a window after dark, his wife, his son who was killed, his said son's wife and others of his children were in the room, is sufficient to establish motive.

6. ——: **Shooting at One: Killing Another.** The fact that defendant's motive to commit murder was prompted by a desire to kill his wife is equally available against him if in attempting to kill her he killed his son. There being sufficient evidence to establish motive, the law, under such circumstances, will supply the motive if that were necessary.

7. ——: **Not Necessary to Guilt.** The defendant may be found guilty of murder, though no motive is made to appear. If the jury believe from all the evidence adduced that defendant did actually commit the crime charged, he should be found guilty, though the evidence fails to establish motive.

8. **JURY: Murder: Selected by Sheriff: Waiver.** Where defendant, convicted of murder in the second degree, took part in selecting the trial jury and made no objection to the manner in which they were selected, it is too late to object in his motion in arrest, for the first time, that a regular panel of jurors was not drawn by the county court, but that the twelve trial jurors were selected from a panel selected by the sheriff; for by this course he had waived such objection.

Appeal from Douglas Circuit Court.—*Hon. Fred Stewart,* Judge.

Affirmed.

*Frank W. McAllister,* Attorney-General, *Clarence P. LeMire,* Assistant Attorney-General, for respondent.

(1) The evidence introduced was sufficient. Where there is any evidence introduced tending to show the guilt of the defendant, the verdict of the jury will not

be disturbed. State v. Concelia, 250 Mo. 425.; State v. Sharp, 233 Mo. 298; State v. Tetrick, 199 Mo. 105. (2) Testimony showing trouble and hard feeling between the defendant and members of the Dooms family other than the deceased was admissible. It tended to show that defendant fired at random through the window with the intent to kill or injure some member of said family. State v. Edwards, 71 Mo. 312; State v. Payton, 90 Mo. 220; State v. Gilmore, 95 Mo. 554; State v. Renfro, 111 Mo. 589; State v. Pollard, 139 Mo. 220; State v. Sharp, 233 Mo. 269. (3) Failure to show motive, malice, or ill will is not ground for reversal. State v. Barrington, 198 Mo. 104. (4) The defendant made no request for an instruction on the weight and credibility of the evidence of the "bloodhound;" neither did he save proper objections or exceptions to the testimony of the owner of said dog. Hence the sixth and seventh assignments in motion for new trial are without merit. (5) Election to try defendant for murder in the second degree, when the evidence shows murder in the first degree, affords no ground for complaint by the defendant. State v. Schieller, 130 Mo. 515; State v. Rollins, 226 Mo. 534; 43 L. R. A. (N. S.) 815. (6) Failure to accord a preliminary hearing should have been brought to the attention of the court by proper motion before plea was entered by the defendant. It cannot be raised for the first time in the motion for a new trial. State v. Keener, 225 Mo. 495; State v. Pritchett, 219 Mo. 703; State v. Glasscock, 232 Mo. 290. (7) A challenge to the array must be in writing. In the absence of such challenge nothing is saved for review in this case. State v. Taylor, 134 Mo. 143.

MOZLEY, C.—On the 3rd day of January, 1918, the prosecuting attorney of Douglas County, Missouri, filed an information in the circuit court of said county, wherein the defendant, John L. Dooms, was charged with murder of the first degree, in that he shot and instantly

killed his son, William A. Dooms, on the 3rd day of December, 1917. The State elected to prosecute defendant under said information for murder in the second degree. It appears that a mistrial was had at the February term of said court and the cause was continued by the court to the April term, 1918. On the 8th day of April ,the same being the first day of said April term of said court, defendant was duly arraigned for murder in the second degree and entered his plea of not guilty, a jury was duly impaneled, his trial had on the issue raised by his plea, and a verdict of guilty as charged was returned by the jury, fixing defendant's punishment at twelve years imprisonment in the State Penitentiary. Motions for new trial and in arrest of judgment were filed, and overruled by the court, and thereupon defendant duly appealed the cause to this court.

For many years before the date of the tragedy in which William A. Dooms lost his life, defendant and his family lived on a farm in the eastern part of Douglas County, Missouri. There were seven boys and one girl in the family, one of the boys being William A. Dooms. A few years before the homicide, on account of some disagreement, defendant and his wife had separated, and defendant boarded here and there in the community, while his wife and other members of the family continued to reside on the farm heretofore mentioned. Even after the separation it appears that continued bitterness and misunderstanding existed between defendant and his wife. A few months prior to the homicide the wife threatened to put him under bond to keep the peace; whereupon defendant left the community and did not return until shortly before the homicide. Two or three weeks before William A. Dooms was killed defendant purchased a 25-20 caliber Winchester rifle which belonged to his son, and after that was frequently seen about the premises carrying said gun.

On the 3rd day of December, 1917, the deceased, William A. Dooms, was residing at the home of his mother at said farm. He had been in Oklahoma for

several months prior thereto, and had returned to her home the latter part of the preceding October. About 5:30 or 6 p. m. on said date, the said William A. Dooms, his wife, his mother and several other members of the family sat about the fire in the southwest room of their house, engaged in conversation. The day had been cloudy and darkness had fallen and a lamp had been lighted. There was a door that opened out upon a porch on the west side of the room where the family were sitting. A few feet south of the door was a window that communicated with said room. While the family were seated and engaged in conversation, as above stated, a shot was fired from the outside through said window, which struck and instantly killed deceased. A 25-20 rifle cartridge was found on the porch, and footprints along the side of the porch. A 25-20 rifle bullet was extracted by the physician from the wound inflicted upon deceased.

On the following day at about two o'clock p. m. the services of a bloodhound were brought into requisition, and after trailing from the scene of the tragedy to where defendant was staying the bloodhound pointed him out as the one who had dropped the cartridge and made the tracks along beside the porch where deceased was killed. Defendant was then arrested and placed in the county jail.

The testimony further discloses that defendant desired the custody of the person of his youngest son and was laboring under the impression that the other members of the family were opposed to his having such custody. Some of the witnesses stated that defendant had said "that he was going to take the boy away;" that "there was going to be trouble, but he would get as many of them as they got of him."

Following the facts a little more in detail, Josie Dooms, wife of Thomas Dooms, swore at defendant's trial that he got the gun above mentioned from her home about three weeks before deceased was killed; she said she gave the gun to him; defendant told her that

he wanted the shells and she gave him nine, and he said that was all he would ever need.

E. W. McDaniels, who lived three-quarters of a mile from the Dooms home, saw defendant go down the road by said home, and when he arrived near the house he stopped in a brush and acted as though he was trying to get a view of something, and when he saw the witness he went off into the woods.

William M. Miller testified that the cartridges taken from the person of defendant, nine in number, were turned over to him and that they were 25-20 caliber, and that in his judgment the ball taken from the body of deceased was a 25-20 caliber ball.

R. C. Buxton stated that defendant told him he was going to take his youngest son away from the rest of the family; "I am going to take the boy away from them; the others won't let me take him; I am going to take the boy dead or alive; I will get just as many of them as they will of me."

George Denton testified that in a conversation with defendant prior to the shooting of deceased of his family troubles, defendant said there would be one of the worst torn up families one had ever seen; that there would be a scatterment made out of them.

Mrs. Jennie Louallen testified that shortly before the killing, she saw defendant in front of Mrs. Dooms home. He was standing there looking at the house with a gun on his arm, and when he heard her coming turned around and walked away from the premises.

John Jones testified that two or three weeks prior to the killing he found the Dooms house on fire, and in about one-half hour defendant came in and told witness that he had trouble with some of the family. Witness further stated that on the day following the fire he found some tracks over by the garden on the Dooms premises, which looked as if they had been made by the shoe defendant was wearing at the time.

Claud Louallen testified that on Thursday before the killing he was at the Collins home, and about nine

p. m. put his horse in the barn to feed it and found a gun in the manger, and about eleven p. m. when witness took his horse out the gun was gone. Defendant was there that night.

Dall Wallen, who lived about a quarter of a mile from the Dooms home, testified that on Friday prior to the killing defendant told him that he had come home for a general "settling up" and that they might kill him, but "they would not kill any more of him than he would of them." Defendant was carrying a gun at the time of the conversation, but it was too dark for witness to describe it.

John Brown testified that on the day deceased was killed he saw defendant going down the road towards the Dooms home, and he was carrying a gun at the time.

Floyd Dooms, grandson of defendant, testified that he had just returned from school, and he with some other children were playing out at the barn near a pond; it was growing dark; saw a man whom he took to be defendant; that he was looking at the house; shortly he turned around and walked off down the fence away from the house, and deceased was · shot one-half hour later and killed.

Mr. Bumps testified that he was present when the dog trailed defendant to the place where he was arrested. Witness said to him, "This looks kinda bad." Defendant replied, "I haven't got much liberty, and not very much longer to live anyway."

Defendant testified in his own behalf; admitted the ownership of the gun, having a few weeks before bought it from another one of his sons; admitted that he frequently carried it past the Dooms home, and that he carried it with him the evening of the day that deceased was killed. He denied substantially all of the other evidence and positively denied shooting his son, the deceased.

Defendant filed no brief in this court, nor was he represented by counsel. In the lower court, however, his

counsel filed a motion to arrest the judgment rendered on the verdict of the jury which reads, omitting formal parts, as follows:

"1.   Because the verdict, judgment and sentence is insufficient in law to incarcerate the defendant in the state prison.

"2.   Because the State of Missouri should not have been permitted to elect, over defendant's objection, to try the defendant for murder in the second degree, there having been no such offense committed . The offense for which defendant was tried, as shown by the evidence, was one of cold blood, by lying in wait, and that of the most atrocious character.

"3.   Because there was no evidence or showing of any kind that defendant was ever awarded a preliminary trial before being placed on trial in this court for murder.

"4.   Because the record proper shows that defendant was not awarded a trial by the regular panel of jurors drawn by the county court, but by a selected panel selected by the sheriff."

And, also, filed a motion for new trial, which omitting formal parts, reads as follows:

"1.   Because the verdict is unsupported by evidence.

"2.   Because the verdict is contrary to and against the laws given by the court.

"3.   Because the court admitted and submitted to the jury incompetent, irrelevant and immaterial evidence for the State and against the defendant, to the great injury and damage to the defendant and over his objections thereto, and without which the jury would not, possibly, have found a verdict of guilty, in this, to-wit: The court at divers times during the progress of the trial and from divers witnesses, allowed said witnesses to testify of family differences between defendant and his wife and other members of his family, when at the time of such family differences the deceased was not a member of such family, was not present, was not shown

to have known of such family differences, had married long prior thereto, and had removed, and was either residing several miles from the Dooms home, or was residing in a distant state; had never taken any part or interest whatever in said family affairs; was at all times friendly to and with his father, this defendant, and took no interest either for or against his said father on account thereof; this evidence so admitted was understood by the jury, no doubt, as tending to show malice, ill will, hatred and revenge on the part of defendant against deceased.

"4. Because the court permitted one witness to testify to some trouble between defendant and some neighborhood church people, over defendant's objection, and in which deceased had no knowledge or connection or concern.

"5. Because the plaintiff (State) failed, utterly, to prove any motive on the part of defendant for the killing of his son. Failed to show any malice, ill will, revenge or purpose by defendant towards said deceased in taking his life; on the contrary, it was conclusively shown that there was the best of feeling and the usual parental affection by defendant toward deceased and by deceased toward defendant.

"6. Because the court failed to instruct the jury as to the weight of the testimony given against defendant by the bloodhound.

"7. Because the court should have stricken out all the testimony as to the bloodhound and his master, as the hound was not permitted to continue the trail from the residence of deceased to the defendant, and for the further reason one of good character should not be convicted upon the evidence of a dog as tending to form a link in the testimony against defendant.

"8. The State, under the evidence, should not have been permitted to elect to try defendant for murder in the second degree, there being, absolutely no testimony to warrant same. The case was one of murder in the first degree, if anything, and did not warrant the trial

of a lower offense. ⸱ The verdict of twelve years shows that defendant, in all probability, would not have been found guilty of the crime committed, under the charge in the indictment for murder in the first degree.

"9.   Because it was not shown by the State that defendant was awarded a preliminary trial before a justice of the peace before being placed upon his trial for murder."

As above stated these motions were overruled by the court, exceptions duly saved and the case appealed to this court.

Broadly speaking it will be observed that these motions deal more or less with generalities, speculations and arguments and, in the main, overlap each other. It will therefore be unnecessary to dispose of them *seriatim,* but we will content ourselves with examining such points as appear necessary to a correct disposition of the case.

I.   It is insisted that the case should be reversed because it is said that defendant was not given a preliminary hearing before a justice of the peace before he was put on trial of guilt or innocence in the circuit court.   The record discloses that defendant was arraigned in the circuit court, entered his plea

Preliminary
Hearing.

of not guilty, the jury was impaneled, the trial had, resulting in his conviction, and that he never once remembered that he was not given a preliminary hearing before a justice of the peace until he came face to face with the necessity for preparing a motion to arrest the judgment and for new trial.   Defendant could have halted the progress of his trial at any stage prior to conviction by simply raising the point that he had not been given such preliminary hearing, but contented himself by allowing the matter to ride, so to speak, evidently intending to hold the point in reserve for future use should it become necessary. It is true that the Revised Statutes 1909, Section 5056, accords the right of preliminary examination to a defendant charged with the commission of a felony, but

such right may be waived by conduct of the defendant. In the case of State v. Pritchett, 219 Mo. 696, this court held, upon this precise question, that: "It is not necessary that the information, charging murder, also charge that defendant had previously been accorded a preliminary examination, nor can the point that he was not given a preliminary hearing be raised in the motion in arrest. The point at most relates to an irregularity, *and if not made before or during the trial will be considered waived.*" On pages 703-704 of this case it is said: "Although the justice might, after a preliminary examination, discharge the prisoner, such action would in no way operate as a bar to an indictment, or to an information by the prosecuting attorney for the same offense, and whatever the justice might do in the case is from a legal standpoint merely preliminary. The matter complained of was at most an irregularity. Besides, the point was not made before or during the trial, and it must, therefore, be regarded as having been waived." In the case Ex parte George McLaughlin, 210 Mo. 657, it is held that the right to a preliminary examination may be waived at the time defendant is required to plead in the circuit court, and if he pleads the general issue "not guilty" he waives it. That is precisely what defendant did. When he plead the general issue of not guilty he waived his right to a preliminary hearing before a Justice of the Peace. We, therefore, overrule this contention.

II. Defendant urges, to say the least, a novel proposition, to the effect that he could not be proceeded against for murder in the second degree for the reason that if he was guilty of anything it was a brand of the most atrocious murder in the first degree, Election to of lying in wait to hurl his unsuspecting Prosecute for victim, while in the presence of his wife, Second-Degree Murder. mother and other members of the family, into eternity. He says he should have been prosecuted for that. The prosecuting attorney doubtless had some reason valid in character for the

course pursued, and why it was not done. However, there is no merit in this assignment. Murder in the first degree contains all of the elements of unlawful homicide and, hence, contains all of the elements constituting murder in the second degree, and no reason appears why the prosecuting attorney may not elect on the part of the State to prosecute for murder in the second. Such course furnishes no valid ground for complaint by defendant.

This court has held many times that where the charge in the indictment or information is murder in the first degree the State may elect to prosecute for murder in the second degree. In the case of State v. Rollins, 226 Mo. l. c. 534, this court said: "An indictment or information for murder in the first degree, under our statutes, embraces every grade and every degree of criminal homicide from the highest to the lowest. The prosecuting attorney in this case elected to proceed for murder in the second only. This he had the right to do." In State v. Schieller, 130 Mo. l. c. 515, the same doctrine is announced, and also in the cases of State v. Mitchell, 237 Mo. 212; State v. Moxley, 115 Mo. l. c. 651; State v. Jones, 106 Mo. 302, and State v. Keeland, 90 Mo. l. c. 338.

We, therefore, rule this point against appellant and hold that the prosecuting attorney was well within his right under the law when he elected to prosecute defendant for murder in the second degree.

III. Defendant alleges error because the court "failed to instruct the jury as to the weight of the testimony given against defendant by the bloodhound," and further complains because the whole of said testimony was not stricken out.

No objection was made by defendant as to the admission of this testimony to the jury, and had it been incompetent its incompetency was waived because timely objections thereto were not made. [Ladd v. Williams,

**Bloodhound.** 104 Mo. App. l. c. 398 and cases cited.] We do not understand that testimony though to be incompetent can be admitted by a party without timely objections being made and when he discovers that such testimony is unsatisfactory and after cross-examination upon the same matter he can get rid of all of it by verbal motion to strike out.

The court gave the jury a very apt instruction to the effect "that the *jury were the sole judges of the weight of the evidence and the credibility of the witnesses."* Under this instruction it was the duty of the jury to weigh all of the testimony submitted in the case and pass on the credibility of the witnesses as well. The objection asigned in the motion for new trial does not go to the failure of the court to give a cautionary instruction as to the "testimony given against defendant by the bloodhound," but relates, as above indicated, to the weight of said testimony. It therefore becomes unnecessary to consider the point further, except to add that said instruction covers the complaint made, fully and fairly, and is a correct instruction under the law. We rule this point against appellant.

IV. Appellant complains that the court committed error in refusing an instruction asked by him upon the presumption of innocence. The court gave an instruction upon presumption of innocense which reads as follows:

"The law presumes the defendant to be innocent, and this presumption attends him until overcome by evidence which proves him guilty beyond a reasonable doubt. If you have a reasonable doubt of defendant's **Instructions.** guilt you should acquit him, but a doubt to authorize an acquittal on that ground alone should be a substantial doubt touching defendant's guilt, and not a mere possibility of his innocence."

We think this was a correct instruction.

The refused instruction reads as follows:

"That the law clothes the defendant with a presumption of innocence, which protects him until it is overcome

by evidence of his guilt beyond a reasonable doubt, which means that the evidence must be clear, positive and abiding, and fully satisfy the minds and conscience of the jury; that it is not sufficient to justify a verdict of guilty that there be a strong suspicion or probability of guilt, but the law requires proof producing a clear, undoubted and 'entirely satisfaction' of guilt, the burden of establishing which is on the prosecution; and that, as the prosecution seeks a conviction on circumstantial evidence alone, the jury cannot convict unless the State has proven defendant's guilt beyond a reasonable doubt by facts and circumstances consistent with each other and with his guilt and absolutely inconsistent with any reasonable theory of innocence.''

The vice of this instruction is that it is too argumentative and partisan, and should have been refused on that ground. But aside from this it was properly refused, because the court gave a proper instruction covering presumption of innocence, and it has been held by this court that it is wholly unnecessary to duplicate instructions. [State v. Guinn, 174 Mo. 680, l. c. 685.] It is quite manifest that duplication of the instructions to the jury tend to confuse, rather than make clear, the issue upon which they must pass.

We hold that said instruction was properly refused and rule the point against appellant.

V. We cannot agree with defendant's contention that the State failed to show a motive for the crime. The testimony above set out shows that bad blood existed beween him and his family, especially his wife; that defendant said he had returned home for a general

**Motive.**  settling up; that he was going to take his youngest son away from them, dead or alive; that the boys would not let him do it, but he would get as many of them as they would of him; that two or three weeks prior to the killing he procured the 25-20 caliber Winchester, and was frequently thereafter seen watching the Dooms home while armed with said gun

and on the night deceased was killed while sitting around the stove after dark. If defendant did not single him out as his victim, he fired the shot indiscriminately into the family with the result that deceased was killed. That act was prompted by a motive to commit crime and the fact that he possibly happened to kill deceased would not alter the situation; the law, under these facts, would supply the motive if it had been necessary that it be supplied. But it has been held by this court in State v. Barrington, 198 Mo. l. c. 103, that where no motive appears for the commission of the crime, yet if the jury believe from all of the evidence that defendant did in fact commit the crime charged, then he should be found guilty, no matter whether any motive for the deed be apparent or not. To the same effect are the cases of State v. David, 131 Mo. l. c. 397, and State v. Henderson, 186 Mo. 473.

We hold that a sufficient motive for the commission of the crime was shown, and rule the point against appellant.

VI. It is urged that the record proper shows that defendant was not awarded a trial by the regular panel of jurors drawn by the county court, but by a selected panel selected by the sheriff.

Defendant submitted to trial before the jury selected, in which he participated in selecting the twelve who tried the case and took no steps as he should have done to correct any errors in this behalf, if any existed, and **Jury.** we hold none existed; they were duly qualified under the law to try the case and were competent jurors in every respect for that purpose. We hold under this condition defendant waived his right to question the selecting of the jury at this late date, and therefore overrule the contention.

VII. It is lastly contended that the verdict, judgment and sentence are insufficient in law to incarcerate defendant in state prison.

We do not so view the assignment. The verdict was one of guilty and assessed defendant's punishment at a term of twelve years in the State Penitentiary, and upon that verdict the court rendered judgment and duly sentenced defendant in accordance with the finding of the Sufficient jury. If there was anything further to do or Evidence. that was necessary to do to make a valid verdict, judgment and sentence, we are not advised what it was. Without pursuing the matter further we hold that the verdict of the jury and the judgment and sentence pronounced thereon by the court were valid and sufficient to uphold defendant's conviction.

We have thus with painstaking care given consideration to the points raised by appellant, which has been quite laborious, because of not being favored by brief of defendant's learned counsel. but without prolonging this opinion further, in consideration of what it is herein said, we think defendant has had a fair and impartial trial, and that the judgment should be affirmed. It is so ordered.

*Railey* and *White, CC.*, concur.

PER CURIAM:—The foregoing opinion of MOZLEY, C., is hereby adopted as the opinion of the court. All of the judges concur.