STATE of Tennessee, Appellee,

v.

Charles L. BARGER, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

Sept. 29, 1980.

Permission to Appeal Denied by Supreme Court Feb. 2, 1981.

Gordon W. Smith, Asst. Atty. Gen., Nashville, Jan Hicks, Asst. Dist. Atty. Gen., Clinton, for appellee.

Robert W. Knolton, Clinton, for appellant.

## OPINION

DAUGHTREY, Judge.

The appellant-defendant, Charles L. Barger, was convicted of second degree burglary and grand larceny. He received concurrent sentences of three to five years on each count. On appeal Barger challenges (1) the sufficiency of the evidence to support the jury's verdict, (2) the admissibility of evidence seized in a warrantless search of the vehicle in which he was riding, and (3) the admissibility of evidence obtained through the use of a bloodhound. We find no reversible error in connection with these issues, and we therefore affirm the judgment of conviction.

The proof at trial indicated that at 10:00 A.M. on February 28, 1979, the defendant appeared at the door of a Mrs. Laura Holbrook, in Anderson County, near Clinton, Tennessee. He asked Mrs. Holbrook if she knew where the Sandersons lived. She responded that she did not, and that no one by that name lived in her Skyline Drive neighborhood. Mrs. Holbrook noticed that the defendant had a missing front tooth

and was wearing a red toboggan and a navy blue windbreaker. She also noticed that the defendant and another person departed in a "cream or beige or light tan" automobile, the passenger side door of which was a contrasting gray color.

At the same time, two other young men visited a Mrs. Clark at her residence in the same neighborhood, and asked where the Ridenours lived. Shortly after these separate visits, Mrs. Holbrook and Mrs. Clark talked by telephone, and they became alarmed. A relative of the vacationing Mr. Ridenour was then contacted, along with another neighbor, who in turn alerted the Sheriff's Department. The Ridenour relative visited the Ridenour home and discovered that it had been burglarized. The Sheriff's Department was again notified.

Sheriff's Deputy Kathleen Johnson received radio dispatches in rapid succession, to the effect that some boys had been knocking on doors in the Skyline Drive neighborhood area, and the Ridenour home had been broken into. In the third dispatch, one of the individuals who had been making inquiries in the area was described has having bushy hair and a missing tooth, and wearing a red toboggan and a blue windbreaker.

As Deputy Johnson entered Skyline Drive via the sole entrance and exit point, she saw coming toward her a light tan automobile, a fender of which was a different color, heading out of the neighborhood. Seated in the car were two males, one of whom had bushy hair and was wearing a red toboggan and a blue windbreaker. The deputy motioned for the car to stop, but it did not. She blocked the roadway with her patrol car, finally causing the oncoming car to halt. The two occupants emerged from the car and approached the deputy's vehicle. In response to a question as to their purpose in the area, they replied that they were looking for a job.

During the course of this discussion, Deputy Faye Smith and local neighborhood resident Joe Magill arrived on the scene. Deputy Smith informed Deputy Johnson that there had indeed been a burglary at the Ridenour home. Deputy Johnson went to the Ridenour residence, leaving the two men, identified as the defendant and Jacky Burkhart, in the custody of Deputy Smith.

Smith took the two men first to Mrs. Clark, who stated that these were not the two men she had seen earlier. When the deputy next presented the men to Mrs. Holbrook, she was able to positively identify the defendant as the man who had earlier appeared at her door.

A short distance from the Ridenour home, Deputy Smith spotted and picked up two juveniles who fit the descriptions given by Mrs. Clark. They were placed in the back of the squad car along with the defendant and Burkhart, and all four persons were conveyed to Mrs. Clark's, where she identified the two youths as the individuals who had earlier come to her door.

Deputy Smith then received a call from a Sheriff's Department investigator who instructed her to arrest all four of the suspects. This she did. Smith proceeded to convey the defendant and the three others to the Anderson County Jail.

In the meantime, Sheriff's Department investigator Danny Phillips arrived on Skyline Drive at the moment Deputy Smith, with the defendant and Burkhart, first drove off from the location where the tan car with the off-color fender or door was stopped. Phillips had heard the radio reports of the burglary of the Ridenour home and descriptions of the suspects and their car.

With no one present other than himself and neighborhood resident Joe Magill, Phillips approached and looked inside the automobile in which the defendant had been riding. In the back seat he saw three coats; two were of a type used in construction work and one was leather with a wool lining. In the front seat and on the front floorboard, he spotted a brick, some silver dollars, and a watchband.

After seeing these items, Phillips entered and searched the car, uncovering in addition a watch, a knife, a bent screwdriver, and a medicine bottle with a prescription for

James H. Barger. Phillips then radioed Deputy Smith and instructed her to arrest the suspects, "for investigation of burglary."

When Deputy Smith arrived at the Anderson County Jail with the four suspects, she obtained from each a shirt and a shoe. The items were placed in four separate paper bags and were taken to the Ridenour house. The shirt and shoe belonging to defendant Barger were sniffed by a bloodhound, Clayboy, owned by J. D. Nelson. The bloodhound then led Nelson to a cache in the woods behind the Ridenour yard of items missing from the Ridenour residence, including a rifle, two shotguns, a tool box, and camera equipment.

The defendant insists that the evidence in this case is not sufficient to convict, on the grounds that the items seized from his automobile were inadmissible, that the bloodhound evidence was likewise improperly allowed into evidence, and that even if this evidence were properly admitted, the State's case was merely circumstantial in nature and therefore insufficient to convict. We find no merit to these contentions.

As set out above, the car in which Barger and Burkhart were riding was searched by Sheriff's Department investigator Danny Phillips. He arrived at the site where the car was pulled over to the side of Skyline Drive in time to see Deputy Smith's police cruiser (containing Barger and Burkhart) drive away. Phillips had already heard radio reports describing the Ridenour burglary and the car driven by the suspects. The car on the scene fit the description.

■ The State maintains that the ensuing warrantless search of the car was justified by probable cause gained through plain view, and exigent circumstances. The formula used by the Tennessee courts with regard to plain view searches is that set out in *Armour v. Totty*, 486 S.W.2d 537 (Tenn. 1972). The requirements are as follows:

(1) The object must be in "plain view."

(2) The viewer must have the right to be in position for the view.

(3) The seized object must be discovered inadvertently.

(4) The incriminating nature of the object must be apparent on its face.

■ In the instant case, the objects seen by Phillips, three coats, some silver dollars, and a watchband, were in plain view as he peered through the car window. As an employee of the Anderson County Sheriff's Department, he clearly had a right to be in a position to look through the windows of a car parked on a county road.

■ In contesting the inadvertence of the view, the defendant maintains that because the officer had heard of the burglary at the time he looked into the car, the objects were not seen inadvertently. But the plurality opinion in *Coolidge v. New Hampshire*, 403 U.S. 443, 470–71, 91 S.Ct. 2022, 2040, 29 L.Ed.2d 564 (1971), indicates that inadvertence is lacking only when the police know in advance the location of the evidence, and thus intend to seize it. In the instant case, Phillips knew only that a burglary had taken place in the neighborhood, and that a car matching the description of the vehicle he saw parked at the side of Skyline Drive had been reported as containing occupants who had behaved in a suspicious manner in the neighborhood at around the same time as the burglary. We conclude that because Phillips did not look into the car with the anticipation of seeing specific items, his view of the objects was inadvertent within the meaning of applicable state and federal law. *Armour v. Totty, supra; Coolidge v. New Hampshire, supra.*

■ Whether the incriminating nature of the objects was immediately apparent is a closer question. Although Phillips testified that the presence of a clean, fur-lined coat in the back seat of the car was out of character with the beat-up nature of the car and the two dirty construction-type coats which were also present, it does not seem unreasonable or overly suspicious for such a coat to be in a car in February. Under the totality of the circumstances, however, the presence of a watchband protruding from under the seat, along with very uncommon silver dollars lying on the

floor of the car, coupled with the fact that a burglary had just been reported in the neighborhood, and given the suspicion-arousing reports which had been communicated to the police about the car's occupants, make it reasonable to believe that the officer immediately perceived the incriminating nature of the objects sufficiently to justify the search.

The State also relies on the exigent circumstances exception to the search warrant requirement. In response, the defendant contends that no probable cause existed for the original stop of the vehicle. The record shows, however, that the car had been described over the police radio as containing a person who had made suspicious inquiries in the neighborhood; a report of a burglary in the neighborhood had been received; and when the sheriff's deputy motioned for the driver to stop, he kept going and the car had to be blocked with the police cruiser. These facts constituted sufficient probable cause to stop the automobile.

We likewise conclude that the record sufficiently demonstrates the existence of exigent circumstances. The car was parked on a public street and accomplices could have removed the vehicle or the stolen items had they been permitted to remain undisturbed. Under *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the officer did not need to obtain a warrant to search the car at the scene.

We therefore conclude under all these circumstances that the warrantless search of the automobile in question was not unreasonable, and that evidence pertaining to the items taken from the vehicle was admissible at trial.

Next, the defendant challenges the admissibility of the evidence gathered through the use of the bloodhound, Clayboy, on various grounds, contending that its use violated his rights under the state and federal constitutions, and that the State failed to lay a proper foundation for the admission of the bloodhound evidence. A review of the record convinces us that the trial judge committed no reversible error in permitting this testimony to go to the jury.

The defendant first contends that the use of so-called "bloodhound evidence" violated his constitutional right under the United States Constitution, Sixth Amendment, and Article I, Section 9 of the Tennessee Constitution, to confront and cross-examine the witnesses against him. The only reported Tennessee case pertaining to the use of blood hound evidence, *Copley v. State*, 153 Tenn. 189, 281 S.W. 460 (1926), addresses the confrontation question by quoting from 16 C. J. 564, as follows:

Such evidence is not inadmissible on the ground that the dog is the witness and cannot be cross-examined. It is the human testimony which makes the trailing done by the animal competent.

*Copley, supra*, 153 Tenn. at 194, 281 S.W. 460. *See Annotation*, 18 A.L.R.3d 1221, 1227 (1968); *State v. Davis*, 154 La. 295, 97 So. 449, 454 (1923). The inability of the defendant to cross-examine the dog is not considered prejudicial, so long as its owner, trainer, or handler is made available for examination as to the dog's general qualifications and specific activities on the day in question. In the instant case, Clayboy's owner-trainer-handler, J. D. Nelson, was cross-examined at length by counsel for the defense as to the dog's heritage, training, and behavior on the day of the Ridenour burglary. We conclude that the defendant's constitutional right to confront and cross-examine was not abridged by the admission of the bloodhound evidence.

Subsequent to his arrest and upon his arrival at the Anderson County Jail, the defendant was ordered by Deputy Smith to surrender articles of apparel which were used to supply a scent for the subsequent bloodhound tracking. Barger claims that the order to give up his clothing was violative of his right against self-incrimination as articulated by the Fifth Amendment and by Article I, Section 9 of the Tennessee Constitution, as he was in effect compelled to give evidence against himself. Barger further claims that pursuant to the Sixth Amendment and to Article I, Section 9 of

the Tennessee Constitution, his entitlement to the assistance of counsel was abridged when he was not furnished with a lawyer at the time he was asked to surrender his shirt and shoe. These claims have no merit.

In his brief filed on appeal, the defendant "concedes that the privilege against self-incrimination does not normally apply to that compulsion which makes the accused the source of real or physical evidence." This concession is supported in the brief by citation to *Trail v. State*, 526 S.W.2d 127, 129 (Tenn.Cr.App.1974).

In *United States v. Edwards*, 415 U.S. 800, 804–809, 94 S.Ct. 1234, 1237–1239, 39 L.Ed.2d 771 (1974), the Court held that "the warrantless seizure of an individual's clothing may be considered as a reasonable, hence constitutional, search when made while he is in custody following his arrest." *See also Commonwealth v. Murphy,* 6 Mass. 335, 375 N.E.2d 366, 372 (Mass.1978).

Clothing is not considered "testimonial" or "communicative" in nature (*Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 302–03, 87 S.Ct. 1642, 1647–48, 18 L.Ed.2d 782 (1967)), and thus it is not protected by the Fifth Amendment against compelled disclosure. *See Schmerber v. California*, 384 U.S. 757, 761, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908 (1966); *United States v. Dionisio*, 410 U.S. 1, 5–6, 93 S.Ct. 764, 767, 35 L.Ed.2d 67 (1973); *Trail, supra*, 526 S.W.2d at 129. As Barger had no right to withhold the clothing from the authorities, we hold that lack of advice from counsel was of no significance.

The defendant also insists that the State should have secured a warrant before using Clayboy to "search" the Ridenours' premises and the adjacent woods where the stolen items were found and "seized." The State correctly responds that because neither the area searched nor the articles found were the property of the defendant, nor in his possession, he lacks standing to challenge the validity of a search conducted on the premises. *Kelley v. State*, 566 S.W.2d 858, 859 (Tenn.1978); *Almonrode v. State*, 567 S.W.2d 184 (Tenn.Crim.App. 1978).

Finally, the defendant attacks the reliability of the bloodhound evidence introduced against him, arguing that the State failed to lay a proper foundation for its admission.

The majority rule in the United States, held by twenty-two states including Tennessee, provides that if a proper foundation is laid, evidence of trailing by bloodhounds is admissible. *See e. g., Terrell v. State*, 3 Md.App. 340, 239 A.2d 128, 131–32 (1968); *People v. Centolella*, 61 Misc.2d 723, 305 N.Y.S.2d 279, 280–81 (Oneida County Ct.1969). *See Annotation*, 18 A.L.R.3d 1221 et seq. (1968); *see also* recent cases *State v. Taylor*, 395 A.2d 505 (N.H.1978); *State v. Bourassa*, 399 A.2d 507 (Vt.1979); *People v. Perryman*, 89 Mich.App. 516, 280 N.W.2d 579 (1979).

A second *Centolella* case, *People v. Centolella*, 61 Misc.2d 726, 305 N.Y.S.2d 460 (Oneida County Ct.1969), a companion case to the one cited above, closely follows the Tennessee bloodhound case, *Copley v. State*, 153 Tenn. 189, 281 S.W. 460 (1926), in delineating a five-step procedure to be followed in establishing the requisite foundation. An analysis of the facts of the instant case, placed in the context of the five factors set out in *Centolella* and *Copley* is a follows:

(1) *Pure blood.* The dog must be of pure blood, and of a stock characterized by acuteness of scent and power of discrimination. *Copley, supra,* 153 Tenn. at 194, 195, 281 S.W. 460; *People v. Centolella, supra,* 305 N.Y.S.2d at 462; *State v. McLeod*, 196 N.C. 542, 146 S.E. 409, 411 (1929); *Pedigo v. Commonwealth*, 103 Ky. 41, 44 S.W. 143, 145 (1898); *State v. Steely*, 327 Mo. 16, 33 S.W.2d 938, 940 (1930). The bloodhound in this case, Clayboy, was identified by his owner and handler, J. D. Nelson, as a full-blooded bloodhound, and the dog's registration paper was made an exhibit at a jury-out hearing. This showing was sufficient to meet the pure blood requirement.

(2) *Proper training.* The dog must possess "acuteness of scent and power of dis-

crimination," and must have been accustomed and trained to track human scents. *Copley, supra*, 153 Tenn. at 195–96, 281 S.W. 460; *People v. Centolella, supra*, 305 N.Y.S.2d at 462; *McLeod, supra*, 146 S.E. at 411; *Pedigo, supra*, 44 S.W. at 145; *State v. Harrison*, 149 La. 83, 88 So. 696, 697 (1921); *Moore v. State*, 26 Ala.App. 607, 164 So. 761, 762 (1935). J. D. Nelson detailed for the trial court the dog's training. He admitted under cross-examination that Clayboy was the first bloodhound that he had ever trained, and that his own training knowledge came from "some [books] from the library here in town." The trial judge overruled the defendant's renewed motion to suppress the "bloodhound evidence" for failure to lay a sufficient foundation. As this determination was not a clear abuse of discretion, the trial judge's ruling must stand.

(3) *History of reliability.* The dog must be shown by experience in actual cases to be reliable in tracking humans. *Copley, supra*, 153 Tenn. at 195–96, 281 S.W. 460; *People v. Centolella, supra*, 305 N.Y.S.2d at 462; *McLeod, supra*, 146 S.E. at 411; *Pedigo, supra*, 44 S.W. at 145–46; *Steely, supra*, 33 S.W.2d at 940; *Harris v. State*, 143 Miss. 102, 108 So. 446, 447 (1926). The proof showed that Clayboy had been used successfully to track the scents of human beings on three prior occasions. The judge implicitly found this showing to be sufficient to establish the dog's reliability.

(4) *Placed at reliable point.* The dog must have been placed on the trail at a spot where the suspect in the crime was known to have been, *People v. Centolella, supra*, 305 N.Y.S.2d at 463, "or on a track which the circumstances indicated to have been made by him." *Copley, supra*, 153 Tenn. at 195, 281 S.W. 460. *See also Terrell, supra*, 239 A.2d at 138; *McLeod, supra*, 146 S.E. at 411. The dog was placed on the "trail" at the Ridenour home—where the police investigation indicated that the defendant had been. This complied with the above-stated requirement.

(5) *Placed within period of efficiency.* The dog must be placed upon the trail within its period of efficiency, *i. e.*, before rainstorms or the passage of time have weakened the scent beyond the point of reliability. *Copley, supra*, 153 Tenn. at 196–97, 281 S.W. 460; *People v. Centolella, supra*, 305 N.Y.S.2d at 463–64; *State v. Brown*, 103 S.C. 437, 88 S.E. 21, 23 (1916). As Clayboy was placed on the "track" before any change in weather and within a short time after the burglary was discovered, the trial judge's implicit finding that the tracking took place within the period of efficiency must stand.

We conclude that the State laid the requisite foundation for the admission of bloodhound evidence in this case. There appear to be no reported cases in which a dog "tracked in reverse," *i. e.*, sniffed the suspect or his belongings and then tracked the scent to stolen merchandise. However, if a proper foundation is laid, we see no intrinsic reason why such evidence should be any less reliable than that in a case where the dog has sniffed an article or area where the suspect had been and has tracked the scent to the defendant. Given the satisfaction of the preliminary requirements outlined above, we hold that evidence of the tracking of a scent in either direction is admissible and may be given whatever weight the jury wishes to accord it.

Although we find no error in the matters raised by the defendant, our review of the record does point to one glaring omission by the trial court, and that is the failure to give a proper limiting instruction on the weight to be given "bloodhound evidence." As our Supreme Court noted in *Copley*, the jury "should be cautioned that a dog's performances are not infallible, should not be given undue weight, and that such evidence alone is not sufficient to convict." *Copley v. State, supra*, 153 Tenn. at 194, 281 S.W. 460. *See also* O. Lee, *Tennessee Evidence* § 152, at 203 (1949); Note, *Evidence—Trailing of Accused by Bloodhounds Admissible*, 5 Tenn.L.Rev. 249 (1927). *Accord People v. Centolella, supra*, 61 Misc.2d 723, 305 N.Y.S.2d 279 (Oneida County Ct. 1969); *People v. Perryman*, 89 Mich.App. 516, 280 N.W.2d 579 (1979), citing *People v.*

*McPherson*, 85 Mich.App. 341, 345, 271 N.W.2d 228, 230 (1978); *State v. Taylor*, 395 A.2d 505, 507 (N.H.1978).

 The trial judge in this case did instruct the jury that "the dog [Clayboy] is a dog properly qualified to trail human beings and the scent of human beings." The jurors were also told that they were "the exclusive judges of the facts and the credibility of the witnesses." We think it is clear that this charge is not sufficient under the rule of *Copley, supra,* and the other authorities cited above. However, unlike the situation in *Copley,* where "proper steps were taken by counsel for [defendant] to get [the matter of the inadequacy of the jury instruction] before th[e] court," *Copley, supra,* 153 Tenn. at 197, 281 S.W. 460, there was no objection taken by defense counsel in this case to the instructions given by the trial judge, nor was a special request submitted, nor was any issue raised in the motion for a new trial or in the defendant's brief on appeal. Under the authority of *Bishop v. State,* 199 Tenn. 428, 287 S.W.2d 49, 52 (1956), in the absence of proper steps to preserve the matter for review, the trial court's failure to instruct will not constitute reversible error unless the omission concerned a "fundamental matter." We conclude that the omitted instruction was not "fundamental" in nature, and that the omission therefore did not deprive the defendant of a fair trial. *See* Tennessee Rules of Appellate Procedure, Rule 36(b); Tennessee Rules of Criminal Procedure, Rule 52(a). Thus, while noticing the deficiency in the charge, we decline to reverse on this basis alone. *Cf. Arterburn v. State,* 208 Tenn. 141, 344 S.W.2d 362 (1961); *State v. Dooms,* 280 Mo. 84, 217 S.W. 43 (1919).

 Finding both the evidence taken from the defendant's car and that located by use of the bloodhound to be admissible, we have no hesitation in concluding that the proof against Barger is sufficient to support the verdict of the jury beyond a reasonable doubt. *See generally State v. Patton,* 593 S.W.2d 913, 916–17 (Tenn.1979); Tennessee Rules of Appellate Procedure, Rule 13(e). *See also Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979). The fact that the evidence introduced against the defendant was largely circumstantial in nature does not affect our conclusion. Circumstantial evidence can form the basis for a valid conviction, and on appeal it is subject to the same degree of scrutiny as any other evidence offered against the defendant. *State v. Brown,* 551 S.W.2d 329, 330 (Tenn.1977). The proof in this case, taken as a whole, points unerringly in the direction of the defendant's guilt of the offense for which he stands convicted.

The judgment of the trial court is affirmed.

DUNCAN and CORNELIUS, JJ., concur.