STATE of Tennessee, Appellee,

v.

Jeffery Wayne BREWER, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

Dec. 13, 1993.

Permission to Appeal Denied April 4, 1994.

Charles M. Corn, Tenth Judicial Dist., Public Defender, Cleveland, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Rose Mary Drake, Counsel for the State, Crim. Justice Div., Nashville, for the State of Tenn.

## OPINION

WADE, Judge.

The defendant, Jeffery Wayne Brewer, was convicted of one count of burglary and one count of theft over $1,000.00. The trial court imposed Range I sentences of four years on each count to be served consecutively. The effective sentence, therefore, is eight years.

In addition to his challenge to the sufficiency of the evidence, the defendant presents two issues for review:

(1) whether the trial court erred by the admission of evidence that a scent dog followed a trail from the scene of the crime to the defendant's automobile; and

(2) whether the sentences were excessive.

We find no error and affirm the judgment of the trial court.

At 3:16 A.M. on June 15, 1992, the alarm system sounded at the Food Center in Madisonville. Minutes later, Officer Scott Hunt of the Madisonville Police Department found a hole in the back wall of the store and several cartons of cigarettes in the floor. Officer Hunt asked Police Chief Gary Robbins of Vonore to bring in a scent dog to assist in the investigation. About 25 minutes later, Robbins arrived with a full-blooded Belgian Malinois which had been purchased about a month earlier by his department after a six-week training period. After hours of classroom and practical training, Chief Robbins and the dog had received certification as a police canine team. The extent of the dog's training was to follow the most recent human scent; it was unable to distinguish one human scent from another.

Upon his arrival, Chief Robbins was informed that other officers had been at the hole in the back of the store and that a single officer had walked from the roadway to some garbage bags in the vicinity of the burglary. The dog first followed the trail the officer had made to the garbage bags and then found another trail on the north side of the bags. The dog tracked the scent in a northeasterly direction across a grassy area, through a pine thicket, over an open area near a bank, across a yard, and ultimately to an automobile in a parking lot. There was a distance of between 100 and 150 yards from the garbage bags to the automobile. The engine of the car was still warm. There were two different I.D.'s in the vehicle. One was that of the defendant. The car was found to be registered in his name.

Roy Frye, an investigator with the Madisonville Police Department found a total of nine trash bags, all of which contained cartons of cigarettes, in the field between the store and the automobile. A sledge hammer was nearby. Two holes were found in the rear wall of the Food Center. While one led to the freezer, the other led into the interior store area. There were other cartons of cigarettes in plastic trash bags scattered throughout the store. Butts of a generic brand of cigarettes were found on the ground

near one of the holes in the wall. There was a single gold band around the filter. The same type of cigarette was found in the ashtray of the defendant's vehicle.

Three or four days after the burglary, the defendant called the police station to get his car. He explained that his oil light had come on and that his vehicle had overheated and eventually broken down between 8:00 and 8:30 P.M. on the night before the burglary. The defendant told Officer Frye that he had left Maryville about 1:00 P.M. with his children in an effort to visit the Lost Sea. Because of his car trouble, he had taken over seven hours to get to Madisonville. He explained that he had to stop every couple of miles to put water in the car. He claimed to have continued on his trip despite the car trouble because of his desire to allow his children to visit the Lost Sea attraction.

Officer Frye learned that the last tour at the Lost Sea was at 7:00 P.M. After hearing of the defendant's explanation, Officer Frye was able to start the car in summer mid-day heat. The water and oil levels were full. The car idled for over 30 minutes without overheating. The oil light was on the entire time. Upon restarting the car, Officer Frye again found it completely operable.

The defendant offered no proof.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 836 (Tenn.1978). The credibility of the witnesses, the weight to be their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as triers of fact. *Byrge v. State,* 575 S.W.2d 292, 295 (Tenn.Crim.App. 1978). This court may neither reevaluate the evidence nor substitute its inference for those drawn by the trier of fact. *Farmer v. State,* 574 S.W.2d 49, 51 (Tenn.Crim.App. 1978); *State v. Grace,* 493 S.W.2d 474, 476 (Tenn.1973). A conviction may be set aside only when the reviewing court finds that the "evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn.R.App.P. 13(e).

A criminal offense may be established exclusively by circumstantial evidence. *Marable v. State,* 203 Tenn. 440, 313 S.W.2d 451 (1958); *Duchac v. State,* 505 S.W.2d 237 (Tenn.1973). The weight of the circumstantial evidence and whether every other hypothesis except that of the guilt of the defendant has been excluded by the evidence presented is for the jury to determine. *State v. Tharpe,* 726 S.W.2d 896 (Tenn.1987); *Williams v. State,* 520 S.W.2d 371 (Tenn. Crim.App.1974). For purposes of appeal, the same standard of review established by Tenn.R.App.P. 13(e) is applicable even if the verdict was based entirely upon circumstantial evidence. *State v. Brown,* 551 S.W.2d 329, 331 (Tenn.1977).

The proof here established that a scent dog was able to trace the trail of a human from the scene of the crime to the defendant's automobile, parked 150 yards or less away. Although the dog was unable to follow the scent of a particular individual, the early morning hours of the robbery indicated that there was little likelihood that anyone other than the perpetrator had established a more recent trail away from the crime scene. Circumstances indicated that cigarettes had been stored in trash bags and taken from the Food Center. The dog followed the scent of trash bags to the defendant's vehicle. The engine was still warm upon their arrival. Similar generic cigarette butts were found near the hole made at the rear of the store and in the ashtray of the defendant's car. A sledge hammer was nearby. The defendant's identification was in his vehicle. Within three days, the defendant sought to regain possession of his car. His explanation for abandoning the vehicle lacked plausibility. While he claimed, for example, that his car had broken down, the engine operated properly when tested by police. From this evidence, we find that the jury acted within its prerogative in determining that all other reasonable hypothesis, save the guilt of the accused, had been excluded beyond a reasonable doubt.

## I

The Tennessee Supreme Court recognized the admissibility of scent dog evidence

in the case of *Copley v. State*, 153 Tenn. 189, 281 S.W. 460 (1926). In *State v. Barger*, 612 S.W.2d 485 (Tenn.Crim.App.1980), this court followed *Copley* and joined the majority of states in determining that scent dog evidence is admissible so long as a proper foundation is established. Our court adopted a five-step procedure first recognized in *People v. Centolella*, 61 Misc.2d 726, 305 N.Y.S.2d 460 (Oneida County Court 1969).

> (1) *Pure blood.* The dog must be of pure blood, and of a stock characterized by acuteness of scent and power of discrimination....

> (2) *Proper training.* The dog must possess "acuteness of scent and power of discrimination," and must have been accustomed and trained to track human scents....

> (3) *History of reliability.* The dog must be shown by experience in actual cases to be reliable in tracking humans....

> (4) *Placed at reliable point.* The dog must have been placed on the trail of the spot where the suspect was known to have been "or on a track which the circumstances indicated to have been made by him." ...

> (5) *Place within period of efficiency.* The dog must be placed upon the trail within its period of efficiency, i.e., before rainstorms or the passage of time have weakened the scent beyond the point of reliability.

*Barger*, 612 S.W.2d at 491–92 (citations omitted). Although our court found the evidence admissible in *Barger*, it suggested that the jury should be cautioned that the performance of the scent dog is not infallible, should not be given undue weight, and is not alone sufficient to convict. 612 S.W.2d at 492–93.

The defendant claims that the evidence should not have been admitted because there was not adequate proof that the dog was a pure-blood; the dog was trained only to recognize a human scent and not that of a particular individual; there was no history of reliability; and that there was no reliable point of placement. We disagree.

Chief Robbins testified that the dog was a purebred Belgian Malinois and had registration documentation. The dog had been trained for six weeks to track the human scent. It had additional training in drug detection, personal protection, and building searches. Chief Robbins and the dog had been trained together and were certified as a team. Many hours of that training involved the tracking of the human scent. While this was the first actual crime in which the dog had been used, the dog had been described as tracking a human scent "dozens of times" with "100%" success. In the words of Chief Robbins, "We never missed. I'm not saying that the dog is infallible, but ... during our training procedures, he was very consistent." Chief Robbins also testified to specific instances of success in tracking humans ranging from 100 yards to one and a half miles. This proof, we think, satisfied the first three criteria.

Moreover, the dog was placed at a point between the rear of the Food Center and the trash bags containing the stolen merchandise. After detecting the trail an officer had made in locating the trash bags, the dog found another trail which led to the automobile of the defendant. When circumstances indicate that the defendant had been in a certain area, the placement of the dog at that point complies with the fourth requirement.

Finally, the dog was at the scene within 30 minutes of the time the alarm was triggered. Neither the passage of time nor the intervention of weather conditions precluded the tracking of the scent. In fact, Chief Robbins described the conditions as "prime":

> You can't get much better than what the conditions were that night. I would say ... that I will not probably attempt a track that is over 24 hours old.

Because the state met each of the five criteria, we conclude that the evidence was properly admitted.

## II

As his final issue, the defendant contends that the offenses did not warrant either the maximum four-year sentences or consecutive service.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review with a presumption that the determinations made by the trial court are correct. Tenn.Code Ann. § 40–35–401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn.1991). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

■ Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn.Code Ann. §§ 40–35–102, –103, and –210; *State v. Smith,* 735 S.W.2d 859, 863 (Tenn.Crim.App.1987).

■ Prior to the enactment of the Criminal Sentencing Reform Act of 1989, classifications qualifying one for consecutive sentences were first set out in *Gray v. State,* 538 S.W.2d 391, 393 (Tenn.1976). In that case, our supreme court held that aggravating circumstances must be present before placement in any one of the classifications. In *State v. Taylor,* 739 S.W.2d 227 (Tenn.1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. The 1989 act is, in essence, the codification of the holdings in *Gray* and *Taylor.* Consecutive sentencing may be imposed in the discretion of the trial court upon a determination that one or more of the following criteria[1] exist:

(1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn.Code Ann. § 40–35–115(b).

Both theft over $1,000.00 and burglary are Class D felonies. Tenn.Code Ann. § 39–14–105 and –402. As a standard offender, the defendant qualified for a sentence of from two to four years on each count. As to the length of the sentences, the defendant argues that the trial court improperly applied certain factors of enhancement. More specifically, he argues that the amount of property taken from the victim was an element of the offense and not applicable to a theft over $1,000.00. Tenn.Code Ann. § 40–35–114(6). We agree with that assessment. *State v. Mike Wayne Tate,* No. 03C01–9110–CR–00327, 1992 WL 281928 (Tenn.Crim.App., Knoxville, October 15, 1992), *permission to appeal denied* (Tenn. Mar. 8, 1993).

---

1. The first four criteria are found in *Gray.* A fifth category in *Gray,* based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. *See* Sentencing Commission Comments.

We do not agree, however, that the trial court was necessarily precluded from finding one or the other of two enhancement factors:

(1) the defendant has a previous history of unwillingness to comply with sentence conditions involving release; and

(2) the felony was committed while the defendant was on probation.

Tenn.Code Ann. § 40–35–114(8) and (13)(C). Defense counsel candidly admits that he found no authority in support of his assertion of error here. In our view, these have been properly treated as separate enhancement factors. The defendant failed to report as required by the conditions of his prior probation; obviously, he committed this burglary and theft during the time of that probation.

There is another enhancement factor which is clearly applicable to each crime. The defendant had a previous history of criminal convictions in addition to those necessary to establish the appropriate range. Tenn.Code Ann. § 40–35–114(1). In 1990, the defendant had been found guilty of two counts of burglary, ordered to pay restitution in the sum of $23,000.00, and placed upon intensive probation.

These three enhancement factors are applicable to each offense. Moreover, the burglary involved extensive damage to the wall of the Food Center and stolen property valued at $1,734.00. That warrants the application of an additional enhancement factor as to that crime. Tenn.Code Ann. § 40–35–114(6). Based upon our own weighing of the factors applicable to each of the crimes, we concur in the four-year sentence on each count.

The trial court did find a mitigating factor. The defendant's conduct was found to have neither caused nor threatened serious bodily injury. The trial court chose not to reduce the sentence, however, based upon that single factor. Because of the statutory presumption of correctness, we cannot find fault with the trial judge's overall assessment of the appropriate length of sentences.

Next, the defendant complains about the application of consecutive sentencing. The trial court imposed the consecutive sentences based on two grounds:

(1) that the defendant had an extensive record of criminal activity; and

(2) that he was on intensive probation at the time of this offense.

The statute authorizing consecutive sentences was taken in great measure from our supreme court's opinion in *Gray*. Persistent offenders, those previously convicted of two or more felonies or one felony and two misdemeanors, qualified for consecutive sentences. So did the multiple offender, whose record of criminal activity was deemed to be "extensive." 538 S.W.2d at 391. The primary purpose of consecutive sentences for those offenders whose record was extensive is to protect the public from an individual not likely to be rehabilitated. Obviously, the intensive nature of the prior probation was unsuccessful. In our view, the trial court had a reasonable basis upon which to determine that the defendant's anti-societal lifestyle had been well-established by the time this sentence was imposed. Thus, we find the consecutive sentences appropriate.

Accordingly, we affirm the judgment and the sentence of the trial court.

SCOTT, P.J., and DWYER, J., concur.