IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 15, 2001

## STATE OF TENNESSEE v. CHARLIE LOGAN

**Appeal from the Criminal Court for Pickett County**
**No. 593     John Wooten, Judge**

---

### No. M2001-00804-CCA-R3-CD - Filed September 11, 2001

---

The Defendant was indicted on twelve counts of aggravated rape and six counts of statutory rape. He pled guilty to four counts of statutory rape, a Class E felony,[1] with an agreed sentence of two years on each count, to be suspended upon service of thirty days. The trial court ordered the sentences to run consecutively, which ruling the Defendant now appeals. The Defendant also appeals the court's denial of his application for judicial diversion. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOE. G. RILEY and JAMES CURWOOD WITT, JR., JJ., joined.

Randall A. York, Crossville, Tennessee, for the appellant, Charlie Logan.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Bill Gibson, District Attorney General; and Dale Potter, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

At the time of these offenses, the Defendant was the Sheriff of Pickett County.[2] He had developed a sexual relationship with the co-defendant, Peggy Dale. Dale had befriended the fifteen year old victim, C.W.[3] C.W. had obtained permission from her mother to spend the night with Dale. Dale decided to drive to Pickett County to visit the Defendant. The Defendant was sitting in his

---

[1] See Tenn. Code Ann. § 39-13-506(c).

[2] The Defendant subsequently resigned this office.

[3] It is the policy of this Court to identify minor victims of sex offenses by their initials.

patrol car on the side of the road when Dale and C.W. drove by. The Defendant was on duty, wearing his uniform and gun. The Defendant pulled Dale over, flashing his blue lights. He told them to meet him in the parking lot of the Durango, a closed bar.

The threesome met in the parking lot and Dale introduced C.W. to the Defendant. The Defendant asked C.W. how old she was, and C.W. replied that she was eighteen. The Defendant asked to see some identification, and C.W. explained that she did not have any with her. The Defendant asked for C.W.'s birth date, and she provided one which, had it been accurate, would have made her eighteen. The Defendant was thirty-eight years old at the time.

Dale approached the Defendant and initiated sexual relations. The Defendant then had sex with the victim, who cooperated. After approximately forty-five minutes, this scenario replayed itself. Dale and the victim then left.

C.W.'s mother testified that C.W. was mentally retarded and took medication for a bipolar disorder. She testified that her daughter required extensive counseling after the rapes and was diagnosed with post-traumatic stress syndrome. She testified that her daughter's life was "ruined" by the crimes.[4]

Whether the sentences were to be concurrent or consecutive was left to the discretion of the trial judge. After a sentencing hearing, the trial court ordered the Defendant's sentences to be served consecutively for an effective sentence of eight years, suspended upon the service of thirty days. In ordering consecutive sentences, the trial court relied on the statutory provision which provides for consecutive sentencing where a defendant "is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim . . . , the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim." Tenn. Code Ann. § 40-35-115(b)(5). The trial court found that the Defendant was in a position of public trust, that the victim "went through a very traumatic period of seven days" before she was able to tell anyone what had happened, that the crimes constituted "a literal sexual escapade out there on the side of the road in a parking lot with a young girl," and that the victim "suffered residual, mental damage." The Defendant now contends that the trial court erred in ordering his sentences to run consecutively.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn.

---

[4]The only proof of the crimes before this Court is contained in a transcript of the preliminary hearing. That proof supports only two counts of statutory rape. However, at the sentencing hearing, the trial court stated that, when it took the Defendant's guilty pleas, "there was a specific, factual basis for all four pleas as to each defendant."

1991).  The burden is upon the appealing party to show that the sentence is improper.  <u>See</u> Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

When conducting a <u>de novo</u> review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment.  <u>See</u> <u>State v. Brewer</u>, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); <u>State v. Thomas</u>, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988); Tenn. Code Ann. §§ 40-35-102, -103, -210.

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result.  <u>State v. Pike</u>, 978 S.W.2d 904, 926-27 (Tenn. 1998); <u>State v. Fletcher</u>, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The record supports the trial court's finding that the Defendant is subject to consecutive sentences because of his sexual abuse of the minor victim.  The relationship between the Defendant and the victim left the victim feeling, by her own testimony, powerless to resist.[5]  She was in a deserted parking lot late at night with a man she had never met before and who was a law enforcement officer.  The Defendant was wearing his uniform and his gun when he met C.W.  The Defendant was thirty-eight years old at the time; C.W. was fifteen.  The proof at the sentencing hearing established that C.W. was mentally retarded and taking medication.  Although the time span of the Defendant's undetected sexual activity was relatively brief, the proof supports the trial court's finding that C.W. suffered distress for a week before she was able to tell anyone what had occurred. The nature and scope of the sexual acts were egregious:  while on duty, the County Sheriff was engaging in sexual intercourse with a minor as she leaned up against his patrol car in a deserted parking lot. Finally, the proof established that the victim suffered significant residual mental damage from the rapes.  Her mother testified that she had been hospitalized with post-traumatic stress syndrome, that she was required to become a homebound student, that she required extensive counseling, and that she had become terrified of police officers.  The trial court did not err in finding the Defendant eligible for consecutive sentences under the statutory criteria.

We also find that the aggregate eight year term of the consecutive sentences is "justly deserved in relation to the seriousness of the offense[s]" and is "no greater than that deserved for the offense[s] committed." Tenn. Code Ann. §§ 40-35-102(1), -103(2); <u>see also</u> <u>State v. Lane</u>, 3 S.W.3d 456, 460 (Tenn. 1999).  The trial court found at the sentencing hearing that the proof established "a

---

[5]C.W. testified that she "didn't want to have sex. . . .  But . . . it was just like if [she] didn't [she] thought [she'd] be in trouble, or [she] thought that [she] would have the police called on [her] if . . . [she] would tell."

confederacy that led to a sexual escapade . . . in Pickett County, involving a 15 year old. That's pretty serious. Especially when you have the chief law enforcement officer . . . doing things like that." We agree. The Defendant's conduct with the victim was reprehensible, and an eight year term of probation is certainly no more than the Defendant justly deserves. The Defendant's complaint about his consecutive sentences is without merit.

The Defendant also contends that the trial court should have granted his request for judicial diversion. The sentencing option commonly known as judicial diversion is codified at Tennessee Code Annotated section 40-35-313. A defendant is eligible for judicial diversion if he or she (a) "is found guilty or pleads guilty to . . . a Class C, D or E felony," (b) has not previously been convicted of a felony, and (c) consents to the deferment of proceedings and placement on probation "for a period of time . . . not more than the period of the maximum sentence of the felony with which the person is charged." Tenn. Code Ann. § 40-35-313(a)(1)(A). However,

> [t]he fact that an accused meets these prerequisites does not entitle the accused to judicial diversion as a matter of right. The statute states that a trial court "may" grant judicial diversion in appropriate cases . . . . Thus, whether an accused should be granted judicial diversion is a question which addresses itself to the sound discretion of the trial court.

State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

Tennessee courts have recognized the similarities between judicial diversion and pretrial diversion and, thus, have drawn heavily from the case law governing pretrial diversion to analyze cases involving judicial diversion. For instance, in determining whether to grant pretrial diversion, a district attorney general should consider the defendant's criminal record, social history, mental and physical condition, attitude, behavior since arrest, emotional stability, current drug usage, past employment, home environment, marital stability, family responsibility, general reputation, and amenability to correction; as well as the circumstances of the offense, the deterrent effect of punishment upon other criminal activity, and the likelihood that pretrial diversion will serve the ends of justice and best interests of both the public and the defendant. See State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993).

A trial court should consider generally the same factors when deciding whether to grant judicial diversion. See Bonestel, 871 S.W.2d at 168; State v. Hammersley, 650 S.W.2d 352, 355 (Tenn. 1983); State v. Anderson, 857 S.W.2d 571, 572-73 (Tenn. Crim. App. 1992). If, after assessing all relevant factors, the trial court chooses to deny judicial diversion, the court must articulate on the record both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh the other factors for consideration. See Bonestel, 871 S.W.2d at 168.

In reviewing the decision of a trial court to grant or deny judicial diversion, this Court applies "the same level of review as that which is applicable to a review of the district attorney general's

action in denying pre-trial diversion." State v. George, 830 S.W.2d 79, 80 (Tenn. Crim. App. 1992); see also Anderson, 857 S.W.2d at 572. In other words, this Court reviews the record to determine whether the trial court abused its discretion. See Bonestel, 871 S.W.2d at 168; Anderson, 857 S.W.2d at 572. To find an abuse of discretion, we must determine that no substantial evidence exists to support the ruling of the trial court. See Bonestel, 871 S.W.2d at 168; Anderson, 857 S.W.2d at 572.

In this case, the trial court's findings with regard to the Defendant's application for judicial diversion were brief but to the point. The trial court stated that it "incorporate[d] by reference that which [it had] said with regard to the multiple convictions in this case. This case is far too serious. It would diminish and demean the severity of these offenses . . . to grant the judicial diversion in this case, accordingly, [judicial diversion is] den[ied]."

The Defendant presented no testimony at the sentencing hearing, nor has this Court been provided with the exhibits which the Defendant made to the sentencing hearing in support of his application for judicial diversion.[6]  The only evidence before this Court is contained in the Defendant's motion for judicial diversion (which simply sets out his eligibility) and in his presentence report. That document reveals that the Defendant is divorced; has two children; has no prior criminal record; is in good health and does not suffer from substance abuse problems; completed the seventh grade; is employed as a service manager at the family business where he was employed prior to his election as sheriff; claims to have the support of his family; and is remorseful for his actions.

While we agree with the Defendant that these personal attributes might support a grant of judicial diversion in another case, we also find that substantial evidence in the record supports the trial court's denial of same in this case. The circumstances of these offenses were egregious. The Defendant's sentence appears relatively lenient, yet his conduct was of the type which justifies public outrage at the conduct of public officials. The grant of judicial diversion would certainly have served to further demean the seriousness of the Defendant's criminal conduct, and, in this Court's opinion, would not serve the ends of justice or the best interests of the public. While the trial court could have made more thorough findings with respect to its denial of the Defendant's application for judicial diversion, we hold that the trial court did not abuse its discretion in its ruling. This issue is, therefore, without merit.

The judgment of the trial court is affirmed.

---

[6]We note that when necessary parts of the record are not included on appeal, we must presume that the trial court's ruling was correct. See State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991).

_____
DAVID H. WELLES, JUDGE