IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 9, 2002

## STATE OF TENNESSEE v. KENNETH JAVON BILLS

**Appeal from the Circuit Court for Hardeman County**
**No. 6451     Kerry Blackwood, Judge**

---

**No. W2001-00396-CCA-R3-CD  - Filed May 10, 2002**

---

The Defendant, Kenneth Javon Bills, was convicted by a jury of attempted second degree murder and aggravated assault.  He was sentenced as a Range I standard offender to ten years for the attempted murder and four years for the aggravated assault, to be served concurrently in the Department of Correction.  In this direct appeal, the Defendant raises the following issues:  (1) whether the evidence is sufficient to sustain his convictions; (2) whether double jeopardy principles require dismissal of his aggravated assault conviction; (3) whether the trial court erred by admitting certain rap lyrics authored by the Defendant; and (4) whether his sentence is excessive.  Finding that double jeopardy principles prohibit the Defendant's dual convictions, we reverse and dismiss the Defendant's conviction for aggravated assault.  In all other respects, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part**

DAVID H. WELLES, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

Marcus M. Reaves, Jackson, Tennessee, for the appellant, Kenneth Javon Bills.

Paul G. Summers, Attorney General and Reporter; Braden H. Boucek, Assistant Attorney General; Elizabeth Rice, District Attorney General; and James W. Freeland, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

        At about 5:00 a.m. on December 3, 1999, the victim, Morgan Robinson, Jr., arose to get ready for work.  While outside calling his dog, Mr. Robinson saw the barrel of a gun pointed at him from some shrubbery at the end of his house.  He heard a shot fire and fell to his left.  Realizing that he had not been hit, Mr. Robinson attacked his assailant, grabbing the pistol.  The two men struggled

and wrestled on the ground. Mr. Robinson put his finger on the trigger of the gun and fired it several times into the ground, trying to empty it. During the struggle, the gunman's mask came off and Mr. Robinson recognized his assailant as the Defendant. Mr. Robinson recognized the Defendant because he had been friends with the Defendant's father for many years, frequently visiting the Defendant's father's home. Mr. Robinson eventually wrested the gun from the Defendant's grasp, and the Defendant left the scene. Mr. Robinson testified that the Defendant's attempt to shoot him had "scared' him.

Hearing the initial gunshot and seeing the commotion outside the window, Mrs. Robinson called 911. After the Defendant left, Mr. Robinson reentered his house and told his wife that the Defendant had tried to kill him. Mr. Robinson had the pistol used during the attack and put it on the living room floor. The police subsequently took this gun into custody. At the time the police took possession of the pistol, a .357 Magnum revolver, it had one live round in the chamber. Investigator Pat Baker testified that the gun would hold a total of six bullets. No bullets or casings were recovered from the scene. However, the police did recover from Mr. Robinson's yard a "dog tag necklace" bearing the name of the Defendant's deceased father.

A few minutes after Mrs. Robinson called 911, Sgt. Eddie Henson of the Bolivar Police Department saw the Defendant walking in a wooded area near Mr. Robinson's house. Sgt. Henson described the Defendant as out of breath, with a lot of grass in his hair and on his clothing. The Defendant appeared to be sweating. Sgt. Henson asked the Defendant his name, which the Defendant gave as Kenneth Bills. The Defendant was unable to produce any identification, and Sgt. Henson did not recognize the Defendant. Accordingly, Sgt. Henson called another officer to his location. The officer who arrived knew the Defendant and had been told by Mr. Robinson that the Defendant was the assailant. Upon this officer's arrival, the Defendant was placed in a squad car and driven to Mr. Robinson's house. There, Mr. Robinson identified the Defendant as the man who had shot at him.

Mr. Robinson testified that his assailant had been wearing a dark hooded jacket and white gloves during the attack. Investigator Pat Baker testified that he found a dark-blue, hooded jogging jacket and pants about 75 to 80 yards from Mr. Robinson's house, alongside a trail near a fence. The jacket bore the logo "Hill Haven." Investigator Baker testified that this jogging suit was similar to a dark blue jogging suit that he had seen the Defendant wearing in October 1999, which also bore the logo "Hill Haven." In the pockets of the clothes found along the trail were a pair of white cotton-lined gloves, a small bag of marijuana, some crack rocks, and some brass knuckles. Wrapped up in the bundle of clothes was also a pistol holder and a back brace. The jacket and pants had grass on them.

Officer Frank Yalda also testified that he had seen the Defendant in October 1999 wearing clothing that matched the clothing recovered in connection with the shooting.

Ernestine Bills, the Defendant's mother, testified that the Defendant had been living with her on December 3, 1999, and was unemployed at that time. She stated that they lived about a mile from

Mr. Robinson's house.  She acknowledged that Mr. Robinson and the Defendant's father had been friends for many years, and that Mr. Robinson had frequently visited the Defendant's father.

The Defendant testified, stating that he had been jogging on the morning he was picked up. He acknowledged knowing Mr. Robinson but explained that they did not have a personal relationship.  The Defendant denied any involvement in the shooting and explained that the grass in his hair was from a shortcut that he took through some trees and bushes.  He denied ever owning or wearing any jogging suit matching the one recovered by police.  He stated that he had seen a man running shortly before he was stopped by the police but did not recognize the man.  He admitted that he had worn his father's "dog tags" in the past but denied that he had been wearing them on December 3, 1999.  The Defendant testified that he sometimes wore a back brace while jogging or working out but denied wearing one on December 3, 1999.

## SUFFICIENCY OF THE EVIDENCE

The Defendant first contends that the evidence is not sufficient to support his convictions. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."  Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000).  In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom."  Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279.  The court may not "re-weigh or re-evaluate the evidence" in the record below.  Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105.  Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment.  See Tuggle, 639 S.W.2d at 914.  All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts.  See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

Second degree murder is the knowing killing of another.  See Tenn. Code Ann. § 39-13-210(a)(1). A person attempts second degree murder when he or she acts with the intent to cause the death and the person's actions constitute a substantial step toward the commission of the offense. See id. § 39-12-101(a)(3).  In this case, the State proved that the Defendant hid himself at the victim's house, aimed a loaded pistol at the victim, and fired a shot at the victim.  The victim

identified the Defendant as his assailant. This proof is sufficient to support the Defendant's conviction for attempted second degree murder.

The same proof supports a conviction for aggravated assault. As charged in this case, aggravated assault is committed when the accused intentionally or knowingly causes another to reasonably fear imminent bodily injury, accomplished with a deadly weapon. See id. § 39-13-102(a)(1)(B). As set forth above, the Defendant secreted himself at the victim's house, and then fired a gunshot at the victim, scaring him. This proof is sufficient to support the Defendant's conviction for aggravated assault. This issue is without merit.[1]

## DOUBLE JEOPARDY

The Defendant contends, and the State concedes, that the Defendant's dual convictions based upon the same conduct offend principles of double jeopardy under the Tennessee Constitution. We agree. See State v. Hall, 947 S.W.2d 181, 184 (Tenn. Crim. App. 1997) (where defendant's convictions of attempted second degree murder and aggravated assault arose out of a single attack upon a single victim, principles of double jeopardy under Tennessee's Constitution required reversal and dismissal of the defendant's aggravated assault conviction). See generally State v. Denton, 938 S.W.2d 373 (Tenn. 1996). As was the case in Hall, the Defendant's convictions in this case arose out of a single attack upon a single victim, and the same evidence was relied upon to prove each offense. Accordingly, we reverse and dismiss the Defendant's conviction for aggravated assault.

## ADMISSION OF SONG LYRICS

The Defendant contends that the trial court committed reversible error in admitting certain song lyrics that he wrote. During the State's cross-examination of the Defendant, the prosecutor produced a document bearing handwritten song lyrics and asked the Defendant if that was his handwriting. The Defendant admitted that it was and that he wrote "a lot of raps, poetry, everything." The Defendant admitted writing the lines, "pulling a gun and not pulling the trigger is like breaking a mirror" and "ain't no sunshine when the mortician pulls a curtain down." Defense counsel objected to the line of questioning on the grounds of relevance, and the prosecutor argued that the rap lyrics went to the Defendant's motive in shooting at the victim. The trial court overruled defense counsel's objection, and the prosecutor continued to ask the Defendant about additional rap lyrics he had written. The Defendant admitted that his rap lyrics glorified violence but denied that he himself believed in glorifying violence. The Defendant also stated that the rap lyrics were at least five years old.

The Defendant now argues that the lyrics "were irrelevant, too remote, and only offered for the purpose of unconstitutionally prejudicing the jury against" him. The State concedes that the Defendant's rap lyrics "were irrelevant to prove motive." We agree that, particularly due to its age,

---

[1] Given our ruling on this issue, we also find without merit the Defendant's contention that the trial court erred in refusing to grant his motion for judgment of acquittal.

this evidence was irrelevant and should have been excluded pursuant to our Rule of Evidence 402 which states that "[e]vidence which is not relevant is not admissible."

However, "[n]o judgment of conviction shall be reversed on appeal except for errors which affirmatively appear to have affected the result of the trial on the merits." Tenn. R. Crim. P. 52(a). Pursuant to this Rule, this Court will not reverse a conviction on the basis of improper admission of evidence "unless it affirmatively appears that the error affected the result of the trial." Davidson v. Holtzman, 47 S.W.3d 445, 456 (Tenn. Crim. App. 2000). We do not believe that such a showing has been made here. The proof of the Defendant's guilt was overwhelming. Accordingly, although we agree that the trial court erred when it overruled the Defendant's objection to the admission of his rap lyrics, we find the error to be harmless. This issue is, therefore, without merit.

## SENTENCING

Finally, the Defendant argues that his sentence is excessive, and that he should have been ordered to serve his sentence on Community Corrections. Because we have reversed and dismissed the Defendant's aggravated assault conviction, we need not review the Defendant's sentence for that offense. We will, however, review his sentence for the attempted second degree murder conviction.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Attempted second degree murder is a Class B felony. See Tenn. Code Ann. §§ 39-12-107(a), 39-13-210(b). The trial court determined the Defendant to be a standard, Range I offender. The

sentencing range to which the Defendant was subject was therefore eight to twelve years.  See id. § 40-35-112(a)(2).  The trial court sentenced the Defendant to the midrange term of ten years, finding as enhancement factors that the Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, and that he employed a firearm during the commission of the offense.  See id. § 40-35-114(1), (9).  The trial court found that no mitigating factors applied.

The presumptive sentence for a Class B felony is the minimum sentence in the range, increased as appropriate for applicable enhancement factors, and decreased as appropriate for applicable mitigating factors.  See id. § 40-35-210 (c), (e).  Here, the trial court imposed a midrange sentence based on two applicable enhancement factors and no applicable mitigating factors.  The Defendant argues that he should have received the minimum sentence in the range.  We disagree. The Defendant has two prior convictions for weapons offenses, a prior conviction for evading arrest, and a prior conviction for possession of drugs.  These prior convictions support the application of enhancement factor (1).  Additionally, the Defendant used a .357 Magnum pistol in his attempted second degree murder of Mr. Robinson, supporting application of enhancement factor (9).  The record contains no proof of mitigating factors.  Accordingly, a midrange sentence is appropriate. This issue is without merit.

The Defendant also contends that he should have been sentenced to Community Corrections. However, because the Defendant committed a violent felony with a firearm, he does not meet the minimum eligibility criteria for community corrections sentencing.  See Tenn. Code Ann. § 40-36-106(a).  Nor is he eligible for Community Corrections on a "special needs" basis because he received a sentence of ten years.  See id. §§ 40-36-106(c), 40-35-303(a); see also State v. Boston, 938 S.W.2d 435, 438-39 (Tenn. Crim. App. 1996); State v. Staten, 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989).  The Defendant's argument has no merit.

## CONCLUSION

The Defendant's conviction of aggravated assault is reversed and dismissed.  The judgment of the trial court is otherwise affirmed.

_____
DAVID H. WELLES, JUDGE