IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 15, 2003

## STATE OF TENNESSEE v. ROLANDO ROSAS CONTRERAS

**Appeal from the Circuit Court for Williamson County**
**No. 1-301-69     Donald P. Harris, Judge**

_____

**No. M2002-01053-CCA-R3-CD - Filed February 21, 2003**

_____

The Defendant, Rolando Rosas Contreras, was convicted by a jury of three counts of aggravated rape and two counts of aggravated assault. After a sentencing hearing, the Defendant was sentenced as a violent offender to twenty-five years for each of the three rape convictions, and he was sentenced as a Range I standard offender to six years for each of the two convictions for aggravated assault. The trial court ordered all sentences to be served concurrently for a total effective sentence of twenty-five years. In this direct appeal, the Defendant argues that the evidence presented at trial is insufficient to support his convictions and that the trial court erred by sentencing him to an effective sentence of twenty-five years. We affirm the convictions and modify the sentence imposed by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed in Part;
Modified**

DAVID H. WELLES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

John H. Henderson, District Public Defender and Douglas P. Nanney, Assistant Public Defender, Franklin, Tennessee, for the appellant, Rolando Rosas Contreras.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Ron Davis, District Attorney General; and Derek K. Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant was convicted by a jury of three counts of aggravated rape, each a Class A felony, and two counts of aggravated assault, each a Class C felony. Following a sentencing hearing, he was sentenced as a violent offender to twenty-five years for each of the aggravated rape convictions. He was also sentenced as a Range I standard offender to six years for each of the aggravated assault convictions. The trial court ordered the sentences to run concurrently, resulting

in an effective sentence of twenty-five years to be served in the Department of Correction. In this appeal as of right, the Defendant argues that the evidence presented at trial is insufficient to support his convictions and that the trial court erred by ordering him to serve an effective sentence of twenty-five years.

The proof offered by the State established that on February 14, 2001, at about five o'clock in the morning, Adrianna Terrazas, a middle school student, was awakened by the sound of someone coming through her bedroom door in her family's apartment. The intruder told her to "go back to sleep and to not scream." The person was holding a knife, and he pointed it at Adrianna. Adrianna testified that she was "scared" because she was afraid the man would "try to kill [her]." Adrianna identified the Defendant as the man who came into her room holding the knife.

Gloria Terrazas, the eleven year old younger sister of Adrianna, testified that she shared a bedroom with Adrianna. On the morning of February 14, she woke up when she heard people talking in her room. She said that a man was telling Adrianna "not to scream." The man was holding a knife, and Gloria thought the man was going to "hurt [them]" and "cut [them]." Both Adrianna and Gloria testified that when the intruder left their room he went to the room of their older sister, Maria.

Maria Terrazas, the older sister of Adrianna and Gloria, testified that she was awakened by the sound of a man talking to her friend, who was sleeping in Maria's room. The man told her friend that "he had gotten in the wrong house" and was going to leave. He told Maria's friend to go back to sleep. Maria's friend attempted to use her cell phone, and the intruder said that if she did not put the phone down, "he might do something to her baby." Maria was able to see that the man was holding a small knife. The man told Maria to lie down, and he was "waving the knife around in his hand." Maria lay on the bed, and the man lay down next to her. He instructed her to remove her shirt and her pants. Maria testified that at first she refused, but the man got angry and told her that if she did not comply, "he'd cut [her]." The man then told her in Spanish to get on top of him and place his penis inside her vagina. Maria refused. At this point, the man, still holding the knife, stood next to the bed and demanded that Maria perform oral sex on him, which Maria did for a few seconds. The man then made her lie down on the bed, and he got on top of her. Maria testified that he touched her cheek with his knife. He then used his knife to cut her underwear off; then he penetrated her vagina with his penis. This lasted less than a minute. The man then got up and knocked several items off Maria's night stand. As Maria was putting her pants on, the man turned on the light, and Maria saw his face for two or three seconds. Maria testified that she had seen him before at the Hispanic grocery store that her parents owned. She identified the Defendant as the man who came into her room on the morning of February 14, 2001.

Maria testified that after the Defendant left her room, he took her into the kitchen. He began groping her, and he bent her over the kitchen table and tried to have anal sex with her. However, he was unsuccessful. The Defendant ordered Maria to get on her knees and perform oral sex on him again, which she did. Maria testified that the Defendant still had the knife while they were in the kitchen. As he was leaving the apartment, the Defendant told Maria that if she told anyone what he

had done, "he would kill [her] or somebody in [her] family." When he left, Maria called the police on her friend's cell phone. Maria was taken to the hospital in an ambulance, and a rape kit was performed on her. Then Maria went to the police department to make a composite picture of the man who had raped her. Maria also made a photo identification of the Defendant.

Dr. Cindy Woodall testified that she treated Maria Terrazas on February 14, 2001. She testified that Maria told her that she had been sexually assaulted in her room earlier that morning. Maria told her that there had been vaginal and oral penetration, but she was unsure whether her attacker had ejaculated. Maria told Dr. Woodall that during the assault, the intruder had held a knife against her cheek. Dr. Woodall testified that she found no damage to Maria's vagina. She did locate dried semen on the entrance to Maria's vagina. After Dr. Woodall performed the rape kit on Maria, she gave it to Detective Becky Johnson. Dr. Woodall stated that, although she located semen around Maria's vagina, the Tennessee Bureau of Investigation laboratory report stated that no semen was present. Dr. Woodall explained that this could have occurred either because she failed to swab the semen properly or the swab was dry.

Detective Tommy Heithcock of the Franklin Police Department testified that on February 14, 2001, he went to the Bramblewood Apartments to investigate the sexual assault of Maria Terrazas. He found a microwave oven outside the bathroom window of the apartment, and he located footprints on top of it. The bathroom window was open, and he discovered similar footprints on the tile floor in the bathroom. From this evidence, Detective Heithcock determined that the intruder had entered the apartment through the bathroom window. However, he was unable to find any fingerprints around the window or on any of the doorknobs. The detective did gather several items, including the panties that had been cut off Maria, bed sheets, a blanket, a pillowcase, and a light bulb from a lamp in Maria's bedroom.

Detective Becky Johnson of the Franklin Police Department went to the emergency room on February 14, 2001 and recovered the rape kit that had been administered to Maria Terrazas. She testified that semen was detected on some of the evidence recovered from Maria's bedroom, such as the blanket and bedspread. However, the DNA matched Maria's boyfriend. Detective Johnson also testified that she assisted Maria in examining photographs at the police station. Maria picked the Defendant out of the photo lineup and said, "That's him." When Ms. Johnson asked Maria how certain she was on a scale of one to ten that it was the Defendant who raped her, Maria replied "Ten." Detective Johnson also showed a photo lineup to Adrianna Terrazas, who said that the man in photograph number five, the Defendant, looked familiar. However, Adrianna was unable to say for certain that the Defendant was the man who had been in her family's apartment.

Agent Elizabeth Reid of the Tennessee Bureau of Investigation, a forensic scientist specializing in latent fingerprint analyzation, testified that she examined the light bulb that Detective Heithcock had removed from the lamp in Maria Terrazas' bedroom. She recovered a fingerprint from the light bulb; then she compared that print with the fingerprints of the Defendant. She testified that the print found on the light bulb matched the Defendant's left thumb print.

The Defendant argues that the proof presented by the State at trial is insufficient to support his three convictions for aggravated rape and two convictions for aggravated assault. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

"Aggravated rape is unlawful sexual penetration of a victim by the defendant . . . accompanied by any of the following circumstances: (1) Force or coercion is used to accomplish the act and the defendant is armed with a weapon . . . ." Tenn. Code Ann. § 39-13-502(a)(1). "'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body . . . into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." Tenn. Code Ann. § 39-13-501(7). Tennessee Code Annotated section 39-13-101(a)(2) states that a person commits assault who "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury." An aggravated assault is an assault in which a deadly weapon is used or displayed. See Tenn. Code Ann. § 39-13-102(a)(1)(B).

In this case, the evidence is sufficient to support the Defendant's three convictions for aggravated rape. Maria Terrazas testified that the Defendant told her to lie on her bed as he was "waving the knife around in his hand." When she did, he instructed her to remove her shirt and her pants. She stated that when she hesitated, he became angry and threatened to cut her with the knife. The Defendant removed his penis from his pants, told Maria to get on top of him and "put it inside [her vagina]." Maria refused, and the Defendant then stood next to the bed and demanded that Maria perform oral sex on him, which she did for about five seconds. The Defendant then had Maria lie

back down on the bed, and he got on top of her. He touched the side of her face with the knife; then he used the knife to cut off her underwear. At this point, the Defendant had vaginal intercourse with Maria for about one minute. The Defendant got up and took Maria into the kitchen. There he began groping her and unsuccessfully attempted to engage in anal intercourse with her. Then the Defendant ordered her to perform oral sex on him again, which she did. Maria testified that the Defendant was wielding the knife the entire time. The Defendant's fingerprint was found inside the home where the attack occurred. Based on this evidence, a rational jury could have found beyond a reasonable doubt that the Defendant did commit three separate unlawful sexual penetrations of Maria Terrazas by force while using a weapon.

Likewise, the evidence is sufficient to support the Defendant's two convictions for aggravated assault. Both Adrianna Terrazas and Gloria Terrazas testified that the Defendant entered their room armed with a knife. Both girls testified that the Defendant instructed them to not scream. Both girls testified that they were afraid. Adrianna stated that she feared that the Defendant would "try to kill [her]," and Gloria testified that she was afraid that the Defendant would "cut [them]." Based upon this evidence, a rational jury could have found beyond a reasonable doubt that the Defendant did cause both the girls to reasonably fear imminent bodily injury while he was displaying a deadly weapon. Accordingly, this issue is without merit.

The Defendant also argues that the trial court erred by ordering him to serve an effective sentence of twenty-five years. When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

At the sentencing hearing in his case, the trial court heard testimony from Steven Adams, a former cell mate of the Defendant in the county jail. Mr. Adams testified that while they were in jail together, he and the Defendant had engaged in a conversation about the components of a successful criminal prosecution. Mr. Adams testified that the Defendant told him that he had raped Maria Terrazas. The Defendant told Mr. Adams how he used a knife while raping Maria. Mr. Adams stated that the Defendant described where the Terrazas family lived and where Maria Terrazas worked. The Defendant explained to Mr. Adams that the police had been unable to find any semen, DNA evidence, or fingerprints at the crime scene. Ultimately, the Defendant asked Mr. Adams whether he would be willing to hurt someone for money. The Defendant added that his family in Mexico had approximately twenty thousand dollars. This caused Mr. Adams to be concerned about the safety of Maria Terrazas. Sometime later at a church service, Mr. Adams approached the Defendant and asked how things were going. The Defendant responded by asking Mr. Adams if he had ever heard of MS Thirteen, which Mr. Adams recognized as the name of a Mexican gang. Then the Defendant winked at Mr. Adams and said, "I've got the problem taken care of." As a result of these conversations with the Defendant, Mr. Adams wrote a letter to the district attorney general's office describing the things the Defendant was saying.

David Pratt, an officer with the Board of Probation and Parole, also testified at the sentencing hearing. He stated that he prepared a presentence report in the Defendant's case.[1] He testified that the Defendant admitted to being in the United States illegally in violation of 8 U.S.C. § 1325. Furthermore, the Defendant admitted while on the stand at the sentencing hearing that he used marijuana once while he was still residing in Mexico. However, the Defendant denied asking Steven Adams to harm Maria Terrazas.

At the conclusion of the sentencing hearing, the trial court ordered the Defendant to serve an effective sentence of twenty-five years in the Department of Correction. The trial judge found as an enhancing factor that the Defendant had a history of criminal behavior in addition to that necessary to establish the appropriate range. See Tenn. Code Ann. § 40-35-114(2) (Supp. 2002). In finding this enhancement factor, the court placed great weight on the testimony of Steven Adams, and it placed little weight on the Defendant's illegal residency in the United States and his smoking marijuana while in Mexico.

After thoroughly reviewing the testimony of Mr. Adams, we cannot conclude that his testimony was sufficient to establish that the Defendant had a history of criminal behavior. Although Mr. Adams testified that the Defendant asked him whether he would hurt someone in exchange for money, the asking of this question does not constitute a crime. Likewise, the mentioning of twenty thousand dollars in Mexico or of a gang does not constitute evidence of criminal behavior. Finally, the Defendant saying that the problem is "taken care of," while perhaps a cause for concern, especially when coupled with statements regarding hurting people, money, and gangs, does not rise to the level of criminal conduct. Therefore, it was error for the court to apply enhancement factor (2) based on the testimony of Steven Adams. However, irrespective of the misapplication of

---

[1]We note that the presentence report was not included in the appellate record.

enhancement factor (2) regarding the testimony of Mr. Adams, there was evidence presented at the sentencing hearing that the Defendant was in the United States illegally and that he had used marijuana in the past. These facts do properly establish enhancement factor (2). However, the trial court gave these facts little weight, and these circumstances do not justify the trial court's enhancement of five years over the presumptive sentence, which, for a Range I offender convicted of a class A felony, is the midpoint of the range, or twenty years. See Tenn. Code Ann. §§ 40-35-112(a)(1), 210(c). Based on our review of the record and the sentencing hearing, we have determined that an enhancement of two years on each count of aggravated rape is appropriate.

The Defendant's convictions are affirmed. We modify the sentence imposed by the trial court from twenty-five years on each count of aggravated rape to twenty-two years on each count. The sentence imposed for each of the Defendant's convictions for aggravated assault shall remain at six years, and all of the sentences shall run concurrently, for an effective sentence of twenty-two years.

_____
DAVID H. WELLES, JUDGE