IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 14, 2003 Session

## STATE OF TENNESSEE v. KEVIN MARTIN

**Direct Appeal from the Circuit Court for Williamson County**
**Nos. I-012-011, I-102-012 & I-70-207     Donald P. Harris, Judge**

_____

**No. M2002-01496-CCA-R3-CD - Filed February 26, 2003**

_____

The Defendant, Kevin Martin, pled guilty to one count of obtaining prescription drugs by fraud, one count of possession of drug paraphernalia, two counts of forgery, one count of telephone harassment, one count of reckless endangerment, and one count of assault. The negotiated plea agreement resulted in an effective sentence of five years and six months. Pursuant to the agreement, service of two of the years was suspended, and the manner of service for the remaining three and one-half years was to be determined by the trial court. Following a sentencing hearing, the trial court ordered the Defendant to serve the sentences totaling three and one-half years in confinement. It is from this order that the Defendant now appeals as of right. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Richard McGee and James O. Martin, III, Nashville, Tennessee, for the appellant, Kevin Martin.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Ron Davis, District Attorney General; and Mary Katherine White, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On April 1, 2002, the Defendant pled guilty to obtaining prescription drugs by fraud, a Class D felony; possession of drug paraphernalia, a Class A misdemeanor; reckless endangerment, a Class E felony; assault, a Class A misdemeanor; two counts of forgery, each a Class E felony; and telephone harassment, a Class A misdemeanor. Pursuant to his plea agreement, the Defendant was sentenced as a Range I standard offender to an effective sentence of five and one-half years. Service of two years was suspended in accordance with the plea agreement. The manner of service for the remaining three and one-half years was to be determined by the trial court. After a sentencing

hearing, the trial court ordered the Defendant to serve the sentences totaling three and one-half years in confinement. In this direct appeal, the Defendant argues that the trial court erred by ordering him to serve three and one-half years in confinement.

The Defendant's convictions for drug fraud and possession of drug paraphernalia stem from an episode that occurred at a WalMart pharmacy on March 22, 2001. Vanderbilt Health Services had issued a prescription to the Defendant for ten tablets of xanax. However, the prescription presented to the WalMart pharmacy by the Defendant had been altered to read one-hundred tablets. When the employees of the WalMart pharmacy noticed the alteration, they called the police. An officer was sent to the pharmacy, where he located the Defendant. The officer found a job application that the Defendant had been filling out on the ground next to the Defendant. Under the application, the officer found a coin purse that contained a mirror, a razor, a metal scope, and a small yellow straw with white powder residue on it.

The facts underlying the Defendant's convictions for assault and reckless endangerment begin on September 23, 2001, when the Defendant and a man named Jonathan Kirkland had an argument. When Mr. Kirkland attempted to leave, the Defendant grabbed him and threw him to the ground. The Defendant then threw a cordless telephone at Mr. Kirkland, hitting him in the head and causing him to bleed. The Defendant then offered to take Mr. Kirkland to the hospital. However, as they rode together, Mr. Kirkland became upset because the Defendant was not driving in the correct direction. When the Defendant explained that he was driving to the hospital in Murfreesboro, Mr. Kirkland requested that the Defendant pull over. Mr. Kirkland told the Defendant that if he did not get to hospital quickly he would die, as he was bleeding profusely. The Defendant replied that if Mr. Kirkland were going to die, then they both would die. The Defendant then began weaving in the road and caused the vehicle to flip over. Mr. Kirkland suffered a lumbar sprain and a sprained wrist, and he required stitches in his arm.

The Defendant's two forgery convictions originated on October 22, 2001, when the Defendant presented a check for payment at the Country Corner Market. The check was drawn on his grandmother's account in the amount of ninety dollars. The Defendant did not have his grandmother's permission to present the check for payment. On October 29, 2001, the Defendant committed a second act of forgery. He presented another check drawn on his grandmother's account for payment without her permission. The amount of this check was forty dollars. At some point, the Defendant attempted to present a third check to the Country Corner Market, but the employees at the market refused to give the Defendant money. The Defendant became very angry and started calling Ronnie Waters, one of the employees at the market, on the telephone. The Defendant called Mr. Waters approximately four times, threatening to "pop him." Mr. Waters believed this to be a threat of bodily harm. This conduct led to the Defendant being indicted for and pleading guilty to telephone harassment.

The presentence report reflects that, at the time of sentencing, the Defendant was nineteen years old and single. He attended public school until the eleventh grade when he began a home school program. He has neither a high school diploma nor a GED. The Defendant has no known

prior convictions, aside from juvenile petitions for unruly behavior and a minor traffic offense in juvenile court. According to the presentence report, the Defendant characterizes his mental health as poor. The Defendant stated that he had been diagnosed with bi-polar disorder, an anxiety disorder, a panic disorder, and depression. The report lists the following as prescription medications presently taken by the Defendant: zyprexa, risperdal, diazepam, celexa, seroquel, and depekote. The Defendant reported an extensive history of substance abuse. The presentence report reflects that the Defendant admitted to using the following illegal drugs at one time or another: marijuana, cocaine (powder form and crack), lsd, pcp, ghp, mescalin, methamphetamine, and ecstacy. The Defendant also reported an addiction to prescription pain medication, including demerol, oxycontin, hydrocodeine, and other opiates.

The presentence report indicates that the Defendant had recently completed an inpatient detoxification program at Vanderbilt University Medical Center. At the time of sentencing, the Defendant was going to a methadone clinic in Nashville. In addition, the Defendant received treatment for his mental health problems from Dr. Bryan Bell at the Cool Springs Psychiatric Group.

At the sentencing hearing, Teresa Gentry, the Defendant's mother, testified that the Defendant has mental health problems and substance abuse problems. At the time of sentencing, the Defendant had recently been a patient at Vanderbilt University Medical Center and had been a patient twice at Parthenon Pavilion. Ms. Gentry testified that her son had been treated by Dr. Bell, but Dr. Bell terminated the treatment because the Defendant had not been truthful.

Ms. Gentry also explained that her mother, Ms. Taylor, was the victim of the forgeries to which the Defendant pled guilty. At the time, the Defendant was living with Ms. Taylor, his maternal grandmother. Not only did the Defendant steal money from Ms. Taylor, he also stole her prescription pain medication while he was out on bond. Ms. Gentry stated that, if the Defendant were granted an alternative sentence, he would live with Ms. Taylor. Ms. Gentry also testified that the Defendant stole pain medication from his younger brother, who had recently had surgery to remove his wisdom teeth.

About three weeks prior to the sentencing hearing, the Defendant began treatment at a methadone clinic. Ms. Gentry testified that during that time, the Defendant had been involved in two traffic accidents. Ms. Gentry said that when her son returns from his treatment at the methadone clinic, he is "belligerent," "drunk big time," and "wasted." She said he does not need to drive in that condition. According to Ms. Gentry, the longest period of time that the Defendant has been in an inpatient program is ten days. When the district attorney general asked Ms. Gentry whether she believed her son is capable of following the rules of probation, she replied, "No…I think the only help for Kevin is he needs to be locked up somewhere to help with his mental problems and his substance abuse, bottom line."

David Pratt, an officer with the Department of Probation and Parole, testified that he prepared the Defendant's presentence report. Mr. Pratt stated that he did not find the Defendant to be honest and forthcoming regarding the types of drugs he had used. Mr. Pratt also spoke with Dr. Bell, who,

at the time, was treating the Defendant. Dr. Bell told Mr. Pratt that he did not believe the Defendant was amenable to correction because the Defendant was unwilling to be honest even with the doctors who were prescribing medication for him. On cross-examination, Mr. Pratt stated that Dr. Bell diagnosed the Defendant as having bipolar disorder, a social phobia, a panic disorder, a personality disorder, and a poly-substance abuse problem. When asked what programs the State offers to treat a person who has problems like the Defendant's, Mr. Pratt explained that both the Middle Tennessee Health Institute and the Special Needs Facility of the Department of Correction could treat the Defendant.

The Defendant also testified at the sentencing hearing. He stated that he suffered from bipolar disorder and had a drug problem. The Defendant explained that he began attending the methadone clinic approximately three weeks before the sentencing hearing. He told the court that the methadone treatment had helped him significantly and that he had not taken any illegal drugs during the three weeks he had been in the program. Furthermore, the Defendant testified that he was taking three prescription medications, two for anxiety and one mood stabilizer. He admitted that he needed help, and he stated that he wanted to obtain his GED and get a job. The Defendant admitted that he was guilty of the charges to which he pled guilty. He also acknowledged that he had been involved in four traffic accidents as a result of being drowsy from his medication. At the conclusion of the sentencing hearing, the trial court ordered the Defendant to serve three and one-half years in confinement. It is from this sentencing order that the Defendant appeals.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary."  Tenn. Code Ann. § 40-35-102(6); State v. Lane, 3 S.W.3d 456, 462 (Tenn. 1999).  Guidance regarding what constitutes "evidence to the contrary" which would rebut the presumption of alternative sentencing can be found in Tennessee Code Annotated section 40-35-103(1), which sets forth the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

See State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000); State v. Ashby, 823 S.W.2d 166, 170 (Tenn. 1991).

Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed.  See Tenn. Code Ann. § 40-35-103(2), (4).  The court should also consider the potential for rehabilitation or treatment of the defendant in determining the appropriate sentence.  See id. § 40-35-103(5).

Because the Defendant is a standard offender convicted of one class D felony, three class E felonies, and three class A misdemeanors, he was entitled to a presumption that he was a favorable candidate for alternative sentencing in the absence of evidence to the contrary.  See Tenn. Code Ann. § 40-35-102(6); State v. Lane, 3 S.W.3d at 462.  The trial judge found that the presumption had been rebutted by testimony by the Defendant's mother, Teresa Gentry, and the Defendant's probation officer, David Pratt, that the Defendant was unlikely to comply with the conditions of an alternative sentence.  The trial judge also found that the Defendant's dishonesty regarding the drugs he has used weighed against the presumption that he was a favorable candidate for alternative sentencing.  The trial court stated that it did not believe the Defendant when he testified that he had taken no medication on the day of the sentencing hearing.  The court described the Defendant as having slurred speech and almost falling asleep during his mother's testimony.  The trial court concluded that the Defendant would be "better off in jail than out there popping pills as fast as he can get some druggist to give them to him."

The Defendant contends that the trial court did not properly consider the sentencing principles set out in Tennessee Code Annotated section 40-35-103(1), which are listed above.  However, the trial court did properly consider the testimony of the Defendant's mother that he could not comply with the conditions of an alternative sentence.  Ms. Gentry also testified that the victim of the Defendant's forgeries was her mother, with whom the Defendant would live if he were granted

an alternative sentence. Also, the court heard the testimony of the Defendant's probation officer, who, along with Dr. Bell, did not perceive the Defendant to be amenable to rehabilitation. The potential or lack of potential for rehabilitation of a defendant should be considered in determining whether he or she should be granted an alternative sentence. See Tenn. Code Ann. § 40-35-103(5). Furthermore, the probation officer testified that the Defendant had been untruthful about the variety of drugs that he had used, and the trial court expressed its doubts about the Defendant's honesty regarding his use of medication on the day of the sentencing hearing. A defendant's credibility or lack thereof is germane to his or her rehabilitative potential. See State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994). Although the Defendant had no prior convictions, at the time he was sentenced he had seven convictions, representing significant criminal behavior. See State v. Cummings, 868 S.W.2d 661, 667 (Tenn. Crim. App. 1992). His longtime use of illegal drugs is further evidence of his previous history of criminal behavior. Therefore, we believe that the presumption that the Defendant is a favorable candidate for alternative sentencing has been rebutted by the evidence of his lack of potential for rehabilitation and long history of criminal conduct. Accordingly, we are unable to conclude that the trial judge erred or abused his discretion in denying the Defendant an alternative sentence.

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE