# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 10, 2003

## STATE OF TENNESSEE v. WALTER RAY SMITH, JR.

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-51036     James K. Clayton, Jr., Judge**

───────────

**No. M2003-01291-CCA-R3-CD - Filed January 23, 2004**

───────────

The Defendant, Walter R. Smith, Jr., was convicted by a jury of five counts of child rape. Following a sentencing hearing, the trial court imposed an effective sentence of forty years. In this direct appeal, the Defendant challenges the sufficiency of the evidence and his sentences. We affirm the Defendant's five convictions for child rape. The trial judge erred by failing to state on the record the facts that support the imposition of consecutive sentences. However, the record clearly shows that consecutive sentencing was proper. Therefore, we affirm the Defendant's sentences.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID G. HAYES, JJ., joined.

Jeffrey S. Burton, Murfreesboro, Tennessee, for the appellant, Walter R. Smith, Jr.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; and William C. Whitesell, Jr., District Attorney General, for the appellee, State of Tennessee.

### OPINION

The victim in this case, H.S., was born on August 24, 1991.[1] At the time these offenses occurred, she was eight years old. Her mother, Nancy Stafford, was romantically involved with the Defendant from August of 1994 until August of 1997. Ms. Stafford and the Defendant had a daughter named Olivia, who was born in 1995. At the time Ms. Stafford separated from the Defendant, they were living in Texas. She subsequently returned to Tennessee to live with her mother. In the fall of 1998, the Defendant also moved to Tennessee, and he and Ms. Stafford entered into an agreed order regarding the custody and visitation of their daughter Olivia. From October of

─────────

[1]Consistent with the policy of this Court, we will refer to the minor victim by her initials.

1998 until these offenses came to light in April of 2000, Olivia visited the Defendant pursuant to the agreed order.

Although H.S. was not the Defendant's daughter, she often accompanied Olivia on visitation with the Defendant. H.S. called the Defendant "daddy" and regarded him as her father. When Olivia and H.S. began their visitation with the Defendant, he was living in a trailer in Hale's Trailer Park with his girlfriend, his son from a prior relationship, whose name was Kenny, and his girlfriend's children. The Defendant lived there until September of 1999. H.S. testified that, on one occasion while she and Olivia were visiting the Defendant at this trailer, she finished watching the movie "Casper," then went to a bedroom to take a nap. Olivia was already asleep. The Defendant entered the room and asked H.S. whether she had ever had a boyfriend. She responded that she had not, and he asked her whether she would like him to show her "how you do it whenever you grow up and you do it with a man." H.S. testified that, although she said "no," the Defendant "told [her] to pull [her] pants down and he took his tongue and he licked [her] monkey." H.S. explained that "monkey" was the word she used for her vaginal area. She stated that the Defendant's tongue went inside the "outside part" of her vagina. H.S. testified that she was in the third grade when this happened.

After the Defendant and his girlfriend broke up, he and his son moved to a different trailer in Hale's Trailer Park. On one occasion while H.S. and Olivia were visiting the Defendant at this second trailer, the Defendant took H.S. into his bedroom. He "took some stuff out of the cabinet next to his bed," put the "stuff" on his finger, and inserted his finger in H.S.'s "bottom." He told her that it "will hurt a little bit," but he said that it would make his "peter go up better." The Defendant then put his "private part" into her rectum "a little bit."

On another occasion while the Defendant was living in the second trailer at Hale's Trailer Park, the Defendant made H.S. lie on top of him with her head near his "private part." The Defendant then made H.S. "put [her] mouth on his private part[,] and he put his mouth on [hers]."

Prior to Halloween of 1999, the Defendant moved out of Hale's Trailer Park and moved in with his friends Aude and Lois Williams. Olivia and H.S. visited the Defendant at the Williams' house for Halloween that year. H.S. testified that, while they were at the Williams' house, the Defendant showed her his "wee wee." In H.S.'s words, the Defendant took out his "wee wee," then "shook it and he wiggled it and then he pulled the skin back and then he put it in my mouth and he made me move my head up and down."[2] H.S. testified that, when the Defendant put his "wee wee" in her mouth, "[w]hite stuff came out." The Defendant told her that she could "either swallow it or spit it out," but her mother "always swallowed it."

After Christmas of 1999, the Defendant moved into the Farrar Brothers Trailer Park. On one occasion around New Year's Day while the Defendant was living at Farrar Brothers, "he took his wee wee[,] and he put it in [H.S.'s] mouth . . . and the white stuff came out again."

---

[2] H.S.'s mother, Nancy Stafford, testified that the Defendant was not circumcised.

Ms. Stafford testified that, on April 13, 2000, she observed H.S. with her hand in her panties, "touching herself." Ms. Stafford had witnessed H.S. doing this several times, and she told H.S. that if she caught her doing it again she would "whoop" her. H.S. told Ms. Stafford that it was not her fault, that the Defendant had been touching her. H.S. testified that she was holding her "monkey" because "it was hurting and it was burning." Ms. Stafford then contacted the authorities.

The Defendant testified that he did not engage in any of the acts that H.S. alleged. He stated that he had never had any kind of sexual relationship with H.S. He then opined that H.S. had been coached into falsely accusing him by her mother, Ms. Stafford, or Ms. Stafford's boyfriend. He suggested that Ms. Stafford coerced H.S. into falsely testifying in order to keep him away from their daughter, Olivia.

The Defendant's twelve-year-old son, Kenny Smith, testified that he lived with the Defendant during the time that Olivia and H.S. visited the Defendant. He stated that he never observed the Defendant touch H.S. in an inappropriate way. Both Lois and Aude Williams testified that, during the time the Defendant lived in their house, they never observed him touch H.S. in an inappropriate way.

The Defendant first argues that the evidence is insufficient to support his five convictions for rape of a child. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

"Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such child is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a). Our criminal code defines "sexual penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body . . . into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." Id. § 39-13-501(7). H.S.'s testimony established five acts of sexual penetration. She described four acts of oral sex and one act of digital penetration.[3] The Defendant concedes in his brief that H.S.'s testimony established the five sexual penetrations.

However, the Defendant asserts in his brief, "the credibility of the victim is not sufficient because the victim was under the direct control of [Ms. Stafford] . . . ." The Defendant then cites the custody dispute between Ms. Stafford and the Defendant as a motive for coercing H.S. to testify untruthfully. The Defendant concludes by stating in his brief,

> it is not irrational to expect the guardian to exercise the dominion and control necessary to have the victim testify untruthfully, the victim being fully dependant on the guardian for support. It is reasonable that the victim has been coached by the guardian absent any observations by any adults of inappropriate conduct within the close confines of the trailers while many adults are present.

The Defendant's argument is flawed for two reasons. First, he has offered no evidence that Ms. Stafford coerced H.S. into testifying untruthfully. Absent proof, we will not assume that any such coercion or manipulation occurred. Second, it is the jury, not this Court, that determines the credibility of witnesses. See Morris, 24 S.W.3d at 795; Pappas, 754 S.W.2d at 623. The jury heard the testimony of H.S., as well as testimony from the Defendant that he believed her mother had pressured her into fabricating the allegations against him. Obviously the jury credited the testimony of H.S. and discredited the testimony of the Defendant. Viewing the evidence in the light most favorable to the State, H.S.'s testimony is sufficient to support the Defendant's five convictions of child rape. This issue is, therefore, without merit.

Next, the Defendant challenges the trial court's imposition of consecutive sentences. When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the event that the record fails to show such consideration, the review of the sentence is purely de novo. See State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

---

[3]H.S. also testified that the Defendant penetrated her anus with his penis. However, the State elected not to proceed on this offense.

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The presentence report reflects that, at the time of sentencing, the Defendant was thirty-four years old, married, and a high school graduate. The presentence reports states that the Defendant was employed in August of 2000 as a heavy equipment operator for Site Work Engineering Technology.[4] From August 1999 until August of 2000, the Defendant was similarly employed by B and B Excavating. The Defendant stated that he had worked as a heavy equipment operator for several other employers in the past, but no other employment information was available. The only prior record listed in the presentence report was a 1994 conviction for reckless driving.

"Rape of a child is a Class A felony." Tenn. Code Ann. § 39-13-522(b). Because the Defendant was a Range I offender, he was subject to a potential sentence of fifteen to twenty-five years for each of his convictions. See id. § 40-35-112(a)(1). The presumptive sentence for a Class A felony is the midpoint of the range, see id. § 40-35-210(c), and may be enhanced or reduced based on the existence of applicable enhancing and mitigating factors, see id. § 40-35-210(d)-(e). In this case, the trial court sentenced the Defendant to twenty years for each conviction, as it found no applicable enhancing or mitigating factors. The trial court also ordered three of the sentences to be served consecutively to the other two sentences, resulting in an effective sentence of forty years.

The Defendant argues that the trial court's imposition of consecutive sentences was improper because the court failed to state its reasons for ordering the sentences to be served consecutively. The Defendant is correct that the trial court erred by failing to place on the record its factual findings upon which it based its imposition of consecutive sentences. See Tenn. Code Ann. § 40-35-209(c). While we acknowledge that de novo appellate review does not relieve the trial judge from compliance with the provisions of section 40-35-209(c), see State v. Gauldin, 737 S.W.2d 795, 798 (Tenn. Crim. App. 1987), we are nonetheless able to conclude that the record is adequate to support consecutive sentencing in this case.

---

[4]The Defendant was arrested for the instant offenses on August 31, 2000.

Tennessee Code Annotated section 40-35-115(b)(5) provides that a trial court may impose consecutive sentences where a

> defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim . . . , the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim . . . .

In this case, the Defendant's relationship to the victim was similar to that of a parent. The victim referred to him as "daddy," and she regularly accompanied her sister to visit him on weekends. For a period of several months, the Defendant abused this relationship by performing oral sex on H.S. and forcing her to perform oral sex on him. He also digitally penetrated her anus with his finger. With respect to the effect the abuse had on H.S., she testified at trial, "I felt like it was my fault because I was letting him do that but he would make me and he is a grown up and you are supposed to listen to grown ups because he was my father at one point and I listened to him." Furthermore, her mother testified at the sentencing hearing that H.S. "still has nightmares." She has "nervous headaches all the time. She has mood swings." "She went through a period whenever we was first going through the trial where she wanted to kill herself. She cried all the time. She was depressed."

Given the Defendant's breach of trust arising from his close relationship with H.S. and the extent of the emotional and psychological damage suffered by H.S. as a result of the abuse, we have no hesitation in affirming the trial court's imposition of consecutive sentencing in this case. The record clearly supports the grounds for consecutive sentencing as provided by Tennessee Code Annotated section 40-35-115(b)(5). Furthermore, a forty-year sentence is "justly deserved in relation to the seriousness of the offense[s]," and it is "no greater than that deserved for the offense[s] committed." Id. §§ 40-35-102(1), 103(2); see also State v. Lane, 3 S.W.3d 456, 460 (Tenn. 1999). This issue is without merit.

Accordingly, the judgments of the trial court are affirmed.

_____
DAVID H. WELLES, JUDGE